COOLEY LLP
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
MAX A. BERNSTEIN (305722)
(mbernstein@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

AMANDA A. MAIN (260814)
(amain@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:     (650) 843-5000
Facsimile:     (650) 849-7400

Attorneys for Defendants
Tile, Inc. and Life360, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON IRELAND-GORDY, STEPHANIE IRELAND GORDY, MELISSA BROAD, and JANE DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TILE, INC., LIFE360, INC., and AMAZON.COM, INC.,<br><br>Defendants. | Case No. 3:23-CV-04119-RFL<br><br>**DEFENDANTS TILE, INC. AND LIFE360, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     August 27, 2024<br>Time:    10 a.m.<br>Dept:    15<br>Judge:   Rita F. Lin<br>Trial Date: TBD<br>Date Action Filed: August 14, 2023 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION ................................... 1
STATEMENT OF RELIEF SOUGHT ............................................................................ 1
STATEMENT OF ISSUES TO BE DECIDED .................................................................. 1
MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2
I.     INTRODUCTION ............................................................................................... 2
II.    BACKGROUND ................................................................................................. 3
      A.     Tile, Life360, and the Amended Complaint ........................................... 3
      B.     Melissa Broad ........................................................................................... 3
      C.     Jane Doe ..................................................................................................... 5
      D.     The Ireland Gordys ................................................................................... 6
III.   LEGAL STANDARDS ........................................................................................ 6
IV.   ARGUMENT ........................................................................................................ 7
      A.     The Court Should Grant Defendants' Motion to Compel Arbitration ................... 7
            1.     Plaintiffs Assented to Tile's Terms of Service Containing an Arbitration Agreement. ........................................................................... 7
            2.     Plaintiffs Agreed to Delegate Questions of Arbitrability to the Arbitrator. ................................................................................................ 10
      B.     The Court Should Stay This Matter ....................................................... 12
V.    CONCLUSION ................................................................................................... 14

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aggarwal v. Coinbase, Inc.*,
 685 F. Supp. 3d 867 (N.D. Cal. 2023) .................................................................................... 11

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011) .................................................................................................................. 6

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
 475 U.S. 643 (1986) .................................................................................................................. 7

*Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*,
 No. 5:13-CV-02664-EJD, 2014 WL 3371842 (N.D. Cal. July 9, 2014) ................................... 7

*Berman v. Freedom Fin. Network, LLC*,
 30 F.4th 849 (9th Cir. 2022) ..................................................................................................... 8

*Bischoff v. DirecTV, Inc.*,
 180 F. Supp. 2d 1097 (C.D. Cal. 2002) ............................................................................. 13, 14

*Brennan v. Opus Bank*,
 796 F.3d 1125 (9th Cir. 2015) ...................................................................................... 7, 10, 11

*Edwards v. Metro. Life Ins. Co.*,
 No. C 10-03755 CRB, 2010 WL 5059553 (N.D. Cal. Dec. 6, 2010) ....................................... 7

*Ferguson v. Corinthian Colls., Inc.*,
 733 F.3d 928 (9th Cir. 2013) .................................................................................................... 6

*G.G. v. Valve Corp.*,
 799 F. App'x 557 (9th Cir. 2020) ........................................................................................... 12

*Green Tree Fin. Corp.-Ala. v. Randolph*,
 531 U.S. 79 (2000) .................................................................................................................... 7

*Greenberg v. Amazon.com, Inc.*,
 No. 20-CV-02782-JSW, 2021 WL 7448530 (N.D. Cal. May 7, 2021) .................................. 12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 586 U.S. 63 (2019) ....................................................................................................... 2, 7, 11, 12

*Howsam v. Dean Witter Reynolds, Inc.*,
 537 U.S. 79 (2002) .................................................................................................................... 7

*Javier v. Assurance IQ, LLC*,
 No. 20-CV-02860-CRB, 2023 WL 3933070 (N.D. Cal. June 9, 2023) ................................... 9

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Keebaugh v. Warner Bros. Entm't*,
 100 F.4th 1005 (9th Cir. 2024) .................................................................................................. 9

*Lee v. Ticketmaster L.L.C.*,
 817 F. App'x 393 (9th Cir. 2020) ............................................................................................... 8

*Macias v. Excel Bldg. Servs. LLC*,
 767 F. Supp. 2d 1002 (N.D. Cal. 2011) ..................................................................................... 7

*Matera v. Google Inc.*,
 No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ............................. 9, 10

*McLellan v. Fitbit, Inc.*,
 No. 3:16-cv-00036-JD, 2018 WL 1913832 (N.D. Cal. Jan. 24, 2018) ..................................... 10

*Meyer v. Uber Techs., Inc.*,
 868 F.3d 66 (2d Cir. 2017) ......................................................................................................... 8

*Mohamed v. Uber Techs., Inc.*,
 848 F.3d 1201 (9th Cir. 2016) .................................................................................................. 11

*Morales v. Lexxiom, Inc.*,
 CV 09-6549 SVW (DTBx), 2010 WL 11507515 (C.D. Cal. Jan. 29, 2010) ........................... 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983) ....................................................................................................................... 6

*Moyer v. Chegg, Inc.*,
 No. 22-cv-09123-JSW, 2023 WL 4771181 (N.D. Cal. July 25, 2023) ...................................... 8

*Oberstein v. Live Nation Ent., Inc.*,
 60 F.4th 505 (9th Cir. 2023) ....................................................................................................... 8

*Perry v. Thomas*,
 482 U.S. 483 (1987) ................................................................................................................... 6

*Peter v. DoorDash, Inc.*,
 445 F. Supp. 3d 580 (N.D. Cal. 2020) ................................................................................... 6, 8

*Pizarro v. QuinStreet, Inc.*,
 No. 22-CV-02803-MMC, 2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) ................................. 9

*Rent-A-Ctr., W., Inc. v. Jackson*,
 561 U.S. 63 (2010) ................................................................................................................... 11

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Sadlock v. Walt Disney Co.*,
  No. 22-CV-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31, 2023) ............................ 9, 10

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
  298 F. Supp. 3d 1285 (N.D. Cal. 2018) .............................................................................. 14

*Shearson/Am. Express, Inc. v. McMahon*,
  482 U.S. 220 (1987) .............................................................................................................. 7

*Smith v. Spizzirri*,
  144 S. Ct. 1173 (2024) ........................................................................................................ 13

*United States v. Neumann Caribbean Int'l, Ltd.*,
  750 F.2d 1422 (9th Cir. 1985) ............................................................................................ 13

*Wolf v. Langemeier*,
  No. 2:09-CV-03086-GEB-EFB, 2010 WL 3341823 (E.D. Cal. Aug. 24, 2010) .............. 13, 14

**Statutes**

Federal Arbitration Act ............................................................................................... 1, 6, 12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 27, 2024, at 10 a.m., or as soon thereafter as this motion may be heard in the above-titled Court, located at 450 Golden Gate Avenue, 18th Floor, Courtroom 15, San Francisco, CA 94102, Defendants Tile, Inc. ("Tile") and Life360, Inc. ("Life360"; together with Tile, the "Tile Defendants") will and hereby do move this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, for an order compelling Plaintiffs Melissa Broad and Jane Doe to arbitrate their claims against the Tile Defendants in their First Amended Class Action Complaint ("Complaint" or "FAC") (ECF No. 32) and staying this case (the "Motion"). This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declaration of Steve Klinkner and the exhibits attached thereto, all pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of hearing on this Motion or otherwise.

**STATEMENT OF RELIEF SOUGHT**

The Tile Defendants seek an order compelling arbitration of Plaintiff Melissa Broad's and Plaintiff Jane Doe's claims in the FAC and a stay of this case.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should compel arbitration of this dispute (including any dispute over arbitrability) and stay this case in light of Plaintiffs' multiple agreements to the Tile Defendants' Terms of Service (the "Tile Terms" or "Terms"), which explicitly require the arbitration of the present dispute and delegate any question of arbitrability to the arbitrator.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Defendants Tile and Life360 move to compel Plaintiffs Broad and Doe to arbitration, pursuant to the binding arbitration agreements they entered into when signing up for Tile accounts. The issues before the Court are straightforward and the required outcome clear: Plaintiffs unambiguously manifested agreement to the Tile Terms when creating accounts, and those Terms at all relevant times included arbitration provisions. Moreover, Plaintiffs consented to a later version of Tile's Terms that also included a mandatory arbitration provision by continued use of the Tile app, following email notice of the Terms update. That both Plaintiffs are bound by the Tile Terms, and the arbitration provisions within them, is beyond reasonable dispute.

In these circumstances, the only potential question in deciding whether to compel arbitration is whether the dispute falls within the scope of the agreement to arbitrate. However, the parties can delegate this question itself to the arbitrator, and the Supreme Court has made clear the Court ***must*** respect that delegation. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."). Here, ***every*** version of the Tile Terms that could apply delegated questions of arbitrability, including questions of the agreement's scope, to the arbitrator, ending the inquiry and requiring that the Court compel all further proceedings to arbitration.

As for the two additional Plaintiffs, Stephanie Ireland-Gordy and Shannon Ireland Gordy (the "Ireland Gordys"), whom the present Motion does not seek to compel to arbitration, their claims should be stayed. The Ireland Gordys allege substantially the same claims as those alleged by Plaintiffs Broad and Doe, relying on the same allegations of design defects in Tile's products. All four Plaintiffs seek the same injunctive relief. The only notable difference in the Ireland Gordys' claims is that they are facially untimely, as those claims allegedly arose and admittedly were discovered by the Ireland Gordys by early 2017. A stay is necessary to conserve party and Court resources, which may otherwise be spent litigating substantially the same issue in two forums. Moreover, a stay is further needed to avoid inconsistent outcomes, including competing and potentially irreconcilable injunctive relief.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

This Motion should be granted, Plaintiffs Broad and Doe should be compelled to arbitration, and the action should otherwise be stayed pending completion of those arbitral proceedings.

## II. BACKGROUND

### A. Tile, Life360, and the Amended Complaint

Tile is a consumer electronics company behind the innovative "Tile" line of products. Declaration of Steve Klinkner ("Klinkner Decl.") ¶ 1. Tiles are Bluetooth-enabled trackers that can be used to find missing items. FAC ¶¶ 27-29. For example, a Tile can be attached to a key ring, placed inside a laptop case, or stowed in a suitcase pocket. If the item gets lost, the user opens the Tile app on their smartphone and can attempt to find where the Tile, and therefore the item, is. Life360 has been Tile's parent company since 2022. Klinkner Decl. ¶ 1.

Plaintiffs' FAC alleges that Tile's products have been misused to track people, including Plaintiffs. FAC ¶ 11. In connection with this alleged unwanted tracking, Plaintiffs allege claims for negligence, design defects, unjust enrichment, intrusion upon seclusion, and violations of the California Constitutional Right to Privacy, the California Invasion of Privacy Act, and the California Unfair Competition Law. FAC ¶¶ 170-229.

### B. Melissa Broad

Plaintiff Broad created a Tile account on June 11, 2021. Klinkner Decl. ¶ 5. To do so, she agreed to be bound by the Tile Terms. Specifically, she was shown the screen displayed as Figure 1 below and clicked "Sign Up" to manifest her assent to the Terms. *Id.* ¶ 6, Ex. A.



**Figure 1**

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

When Plaintiff Broad signed up for a Tile account, the January 21, 2021 version of the Tile Terms (the "January 2021 Terms") were in effect and the sign-up flow shown in Figure 1 linked to them. Klinkner Decl. ¶¶ 6-7, Ex. B. The January 2021 Terms included a mandatory arbitration provision that required Plaintiff Broad to arbitrate disputes "arising out of or relating" to, among other things, "any Tile product or service and its marketing" and "the relationship between [Plaintiffs] and Tile." *Id*. at 17. The January 2021 Terms incorporated the AAA rules. *Id*.

When Tile updated its Terms on October 26, 2023 (the "October 2023 Terms"), it sent Plaintiff Broad emails giving notice of the updates and indicating that continued use after November 26, 2023, would constitute consent. Klinkner Decl. ¶ 11, Ex. G at 2. This email is shown as Figure 2 below.

**Updated Terms of Service and Privacy Policy**

Thanks for choosing Life360, Tile, and Jiobit to protect and stay close to the people, pets and things you love! Tile and Jiobit have joined the Life360 family, and we have consolidated our Terms of Service into a single, comprehensive Terms of Service covering all of our products and services. We have also updated the terms for changes to applicable laws and to clarify some of the terms surrounding particular features such as, limitations for Roadside/Breakdown Assistance and the Tile warranties, updates for Members residing in the United Kingdom.

We have also updated our Privacy Policy to reflect the recently passed EU-US Data Privacy Framework and the UK Extension to the EU-US Data Privacy Framework.

You can find our updated policies here: **Terms of Service** and **Privacy Policy**. If you have any questions about these changes or about your account, please visit **Life360's Help Center** or the **Tile and Jiobit Help Center**, or contact us via email for Life360 **support@life360.com**, for Tile **support@tile.com**, or for Jiobit via **support@jiobit.com**.

This update is effective on November 26, 2023. If you continue to use any of our apps, or access our websites (other than to read the new terms) on or after November 26, 2023, you are agreeing to the new Terms of Service and Privacy Policy.

Thank you,
The Life360 Team

**Figure 2**

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

After receiving this email, Plaintiff Broad continued to use the Tile app, thereby agreeing to the updated Terms. Klinkner Decl. ¶ 12. Like prior Tile Terms, the updated October 2023 Terms included a mandatory arbitration provision. Specifically, the October 2023 Terms required arbitration of disputes relating to "any and all use of the [Tile] Products or Services," including claims under "any [] legal [] theory . . . ." Klinkner Decl. Ex. E at 18 (Section XVIII.A). The October 2023 Terms also explained that the user agreed to delegate to the arbitrator "all threshold issues of arbitrability including the validity, enforceability or scope" of the agreement to arbitrate. *Id.* Thus, the parties' eventual arbitrator has sole authority to resolve all disputes as to these subjects.

C.  **Jane Doe**

Plaintiff Doe created a Tile account on July 6, 2023. Klinkner Decl. ¶ 13. Like Plaintiff Broad, Plaintiff Doe had to agree to the Tile Terms to do so. She was shown the screen displayed as Figure 3 below and clicked the checkbox next to the language "I have read and accept Tile's Terms of Service . . . ." *Id.* ¶ 14, Ex. H.



**Figure 3**

When Plaintiff Doe signed up for a Tile account, the February 16, 2023 version of the Tile

Terms (the "February 2023 Terms") were in effect, and the sign-up flow shown in Figure 3 linked to them. Klinkner Decl. ¶¶ 14-15, Ex. I. These Terms too included a mandatory arbitration provision with the same language as the January 2021 Terms that Plaintiff Broad initially agreed to—language that required Plaintiff Doe to arbitrate disputes "arising out of or relating" to, amongst other things, "any Tile product or service and its marketing" and "the relationship between [Plaintiffs] and Tile." *Id.*, Ex. I at 21 (Section A). Like the January 2021 Terms, the February 2023 Terms incorporated the AAA rules. *Id*.

When Tile updated its Terms in October 2023, Plaintiff Doe received the same email sent to Plaintiff Broad and shown above. Klinkner Decl. ¶ 17, Ex. G at 2. Like Plaintiff Broad, Plaintiff Doe then continued to use the Tile app. *Id*.[1]

### D. The Ireland Gordys

The remaining two Plaintiffs, the Ireland Gordys, allege that a Tile was misused to track them in 2016 and up until March 2017. However, they waited almost ***eight years*** before they filed claims. *See* FAC ¶ 78. Their claims are all time-barred as a result. Neither of the Ireland Gordys alleges any subsequent misuse of Tile products to track them since 2017.

### III. LEGAL STANDARDS

The Federal Arbitration Act ("FAA") reflects a "congressional declaration of a liberal federal policy favoring arbitration agreements[.]" *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (citation omitted). A motion to compel arbitration pursuant to the FAA is intended to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (citation omitted). Courts routinely recognize a "liberal federal policy favoring arbitration," along with "the fundamental principle that arbitration is a matter of contract." *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 583 (N.D. Cal. 2020) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

---

[1] The Tile Defendants further updated their Terms on March 5, 2024. Klinkner Decl. ¶ 9, Ex. F. These Terms too require arbitration and have an identical arbitration provision to that found in the October 2023 Terms.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

In deciding whether to compel arbitration, the district court's role is limited to determining two gateway issues: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "However, these gateway issues can be expressly delegated to the arbitrator where the 'parties *clearly and unmistakably* provide otherwise.'" *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein*, 586 U.S. at 68.

Moreover, "[i]n a motion to compel arbitration, the burden of proof is on the party asserting jurisdiction and contesting arbitration." *Edwards v. Metro. Life Ins. Co.*, No. C 10-03755 CRB, 2010 WL 5059553, at *4 (N.D. Cal. Dec. 6, 2010) (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)); *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). And in deciding this motion, the Court "may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*, No. 5:13-CV-02664-EJD, 2014 WL 3371842, at *3 (N.D. Cal. July 9, 2014) (citations omitted); *see also Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011).

## IV.   ARGUMENT

### A.   The Court Should Grant Defendants' Motion to Compel Arbitration

Plaintiffs Broad and Doe (1) agreed to arbitrate disputes with Defendants and (2) agreed that any questions of arbitrability, including regarding the scope and enforceability of the arbitration requirement, would be decided by the arbitrator. Under binding and unequivocal Supreme Court and Ninth Circuit precedent, the Court should therefore grant the Motion and compel both Plaintiffs to arbitration. *See Brennan*, 796 F.3d at 1130; *Henry Schein, Inc.*, 568 U.S. at 68.

#### 1.   Plaintiffs Assented to Tile's Terms of Service Containing an Arbitration Agreement

Plaintiffs agreed to arbitrate disputes with Tile by agreeing to Tile's Terms, which at all relevant times included mandatory arbitration provisions. To form a contract under California law, "there must be actual or constructive notice of the agreement and the parties must manifest mutual

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023). The "most straightforward application of these principles . . . involves so-called 'clickwrap' agreements" in which a user clicks to agree to online terms. *Id.* (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)); *see also Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020); *Oberstein*, 60 F.4th at 513 ("[c]ourts routinely find clickwrap agreements enforceable"). Internet companies also frequently use a hybrid known as a "sign-in wrap," in which "users are notified of the existence of the website's terms of use and advises a user that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service." *Moyer v. Chegg, Inc.*, No. 22-cv-09123-JSW, 2023 WL 4771181, at *4 (N.D. Cal. July 25, 2023). Courts have found these types of agreements valid "where the existence of the terms was reasonably communicated to the user." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75-76 (2d Cir. 2017) (applying California law and collecting cases). Whether a customer chooses to read the hyperlinked terms is immaterial. *See Moyer v. Chegg, Inc.*, No. 22-CV-09123-JSW, 2023 WL 4771181, at *4 (N.D. Cal. July 25, 2023) (explaining the same).[2]

Here, Plaintiffs Broad and Doe both went through the Tile sign-up flow, which included standard and valid agreements binding users to the Tile Terms. *See supra* Section II.B, II.D. The straightforward Tile sign-up flows Plaintiffs navigated included conspicuous language unambiguously stating that the user accepted Tile's Terms; these Terms were prominently hyperlinked, and Plaintiffs had to click the "Sign Up" button immediately below to create their account. (Plaintiff Doe additionally had to click a checkbox further indicating agreement to the Terms.) Klinkner Decl. ¶¶ 6, 14-15. Not only did Plaintiffs initially agree to the Tile Terms through these affirmative "clickwrap" agreements, they also received emailed notices of the October 2023 update to the Terms and assented to the updated Terms through continued use.

***Plaintiff Broad.*** As described above, when Broad created a Tile account on June 11, 2021,

---

[2] In determining whether an arbitration agreement exists, the Court should apply ordinary state law principles that govern contract formation. *See Peter*, 445 F. Supp. 3d at 584. Federal courts sitting in diversity look to the law of the forum state when making choice-of-law determinations. *Id.* California choice-of-law principles apply California law, unless there is a conflict with another state's laws. Plaintiffs are unlikely to suggest such a conflict exists here, as "clickwrap" agreements are recognized as binding across the country.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

she was presented with a streamlined sign-up flow with conspicuous and direct language, as well as hyperlinks to the relevant contracts. *See* Klinkner Decl. ¶¶ 5-6, Ex. A ("By pressing Sign Up, you are indicating that you have read and agree to the Privacy Policy and Terms of Services."). She affirmatively clicked the button immediately beneath this language that said: "Sign Up." *Id.* Courts routinely hold that virtually identical web flows result in binding assent to online terms. *See Pizarro v. QuinStreet, Inc.*, No. 22-CV-02803-MMC, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (finding clickwrap agreement to terms with arbitration provision binding); *Javier v. Assurance IQ, LLC*, No. 20-CV-02860-CRB, 2023 WL 3933070, at *2 (N.D. Cal. June 9, 2023) (same). In fact, the Ninth Circuit recently reversed and remanded the denial of a motion to compel arbitration based on a "sign-in wrap" similar to the one Plaintiff Broad navigated here. *See Keebaugh v. Warner Bros. Entm't*, 100 F.4th 1005, 1014 (9th Cir. 2024) (finding defendant provided reasonable notice where it "require[d] individual users to press a 'Play' button"). Plaintiff Broad is thereby bound by the January 2021 Terms that were then in effect and which included a mandatory arbitration agreement and class action waiver. *See supra* Section II.B.

After Plaintiff Broad's agreement to the January 2021 Terms, Tile updated its Terms, including on October 26, 2023. Klinkner Decl. ¶ 9, Ex. E. Tile gave notice of this update, emailing all users, including Plaintiff Broad. *Id.* ¶ 10, Ex. G. This email made clear that "[i]f you continue to use any of [Life360's] apps . . . you are agreeing to the new Terms . . . ." *See id.* After Plaintiff Broad was sent this notice email, Tile's Records show she continued to use the Tile app. Indeed, she connected a smart home device to one of her Tiles in January 2024 and opened the Tile app on January 22, 2024, and last used the Tile app as recently as April 26, 2024. *See* Klinkner Decl. ¶ 12. She therefore agreed to not only the January 2021 Terms but also the updated October 2023 Terms. *See Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016) (terms stating that users who did not agree to posted modifications "should discontinue [] use" bound continuing users to updated terms upon posting); *Sadlock v. Walt Disney Co.*, No. 22-CV-09155-EMC, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) (agreeing with other courts that "emails followed by continued use is sufficient to establish assent"). In these ways, Plaintiff Broad was bound first by the January 2021 Terms and later by the October 2023 Terms—

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

both of which included mandatory arbitration clauses.

**Plaintiff Doe.**  When Plaintiff Doe created a Tile account on July 6, 2023, she not only clicked a sign-up button to indicate her assent to the Tile Terms, but also clicked a separate checkbox re-confirming that she had read and accepted Tile's then-operative Terms.  *See* Klinkner Decl. ¶ 14, Ex. H.  In *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018), users encountered a nearly identical sign-up flow to the one Doe navigated here: "each clicked a box next to a hyperlinked terms of service . . . that stated, 'I agree to the Fitbit Terms of Service and Privacy Policy.'"  The Court described this as "a classic 'clickwrap' agreement," found that it showed "plaintiffs manifested their objective assent to the [terms of service] by checking the 'I agree' box," and therefore compelled the parties to arbitrate.  *Id.* at *2-3.

The February 2023 Terms then in effect, and to which Plaintiff Doe agreed through this process, included a mandatory arbitration agreement and class action waiver.  Klinkner Decl. ¶ 15, Ex. I.  When Defendants updated their Terms in October 2023, Plaintiff Doe received the same email that Tile sent to Plaintiff Broad, as discussed above.  Klinkner Decl. ¶ 15.  Like Plaintiff Broad, Plaintiff Doe then continued to use the Tile app, consenting to the updated Tile Terms.  *See Matera*, 2016 WL 5339806, at *17; *Sadlock*, 2023 WL 4869245, at *12.  She last used the Tile app as recently as April 4, 2024.  Klinkner Decl. ¶ 18.  As with Plaintiff Broad, every version of the Terms Plaintiff Doe agreed to included mandatory arbitration provisions.

For all these reasons, there is no reasonable dispute that Plaintiffs Broad and Doe formed contracts with Tile that included a mandatory arbitration requirement.

### 2. Plaintiffs Agreed to Delegate Questions of Arbitrability to the Arbitrator

The only remaining inquiry, under prong 2 of the analysis, is whether the present dispute falls within the scope of the arbitration provisions Plaintiffs agreed to.  *See, e.g.*, *Brennan*, 796 F.3d at 1130 (explaining court's role as limited to determining consent and then scope).  However, the October 2023 Terms both Plaintiffs Broad and Doe agreed to expressly delegate this question of scope ***exclusively to the arbitrator***.  *See supra* Section II.B, II.D; Ex. E at 18 (Section XVIII.A).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

Specifically, the October 2023 Terms state that "all threshold issues of arbitrability including the validity, enforceability or scope" are to be determined solely by the arbitrator, not the Court. *See* Ex. E at 18 (Section XVIII.A). In these circumstances, the Court must compel arbitration and cannot invade the province of the arbitrator by analyzing questions of scope (or otherwise evaluating the enforceability of the arbitration provision). *See Henry Schein, Inc.*, 586 U.S. at 69 (holding court had no power to decide arbitrability issue where there was "clear and unmistakable evidence" parties' agreement delegated such questions to the arbitrator). Courts considering similarly worded arbitration and delegation provisions consistently find the same. *See*, *e.g.*, *Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 873–74, 879 (N.D. Cal. 2023) (finding nearly identical language to be clear and unmistakable evidence of an intent to delegate gateway questions of arbitrability to the arbitrator); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (finding language "delegat[ing] to the arbitrators the authority to decide issues relating to the 'enforceability, revocability or validity of the Arbitration Provision' . . . clearly and unmistakably indicates [the parties'] intent for the arbitrators to decide the threshold question of arbitrability" (citation omitted)). This precludes the Court from considering, for example, questions about whether this dispute is within the scope of the agreement to arbitrate or whether the agreement to arbitrate is unconscionable. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66-73 (2010) (delegation provision gave the arbitrator "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable").

Even were the Court to look only to the Tile Terms Plaintiffs Broad and Doe initially agreed to at signup, the outcome would be the same. Both the January 2021 Terms that Plaintiff Broad originally agreed to and the February 2023 Terms that Plaintiff Doe originally agreed to call for use of the AAA arbitration rules, which themselves *also* delegate questions of arbitrability to the arbitrator. In fact, the Supreme Court has ruled that the incorporation of the AAA rules **standing alone** constitutes a valid and binding delegation to the arbitrator of **any** questions of arbitrability. *See Henry Schein, Inc.*, 586 U.S. at 67-68. The Ninth Circuit has long been in accord. *See*, *e.g.*, *Brennan*, 796 F.3d at 1130 ("Virtually every circuit to have considered the issue has determined

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (citation omitted)); *G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir. 2020) ("the teenagers clearly and unmistakably agreed to arbitrate questions of arbitrability because the arbitration agreement incorporates AAA rules"); *see also Greenberg v. Amazon.com, Inc.*, No. 20-CV-02782-JSW, 2021 WL 7448530, at *7 (N.D. Cal. May 7, 2021) (explaining the same).[3]

As such, whether Plaintiffs Broad and Doe are bound by the October 2023 version of the Tile Terms—and they are—or are bound by the Tile Terms they affirmatively agreed to at sign-up, the delegation to the arbitrator is effective and decisive. Because Plaintiffs Broad and Doe entered into agreements with arbitration provisions and delegated arbitrability, there is no further issue before the Court—arbitration must be compelled and Plaintiffs can raise further defenses to arbitrability, if any, with the arbitrator. *Henry Schein, Inc.*, 586 U.S. at 68-69.

Even were the Court to consider the question of scope—and it is strictly precluded from doing so as a result of the delegation clauses—the present dispute clearly falls within the scope of all versions of the arbitration provision at issue. The January 2021 Terms and February 2023 Terms require arbitration of any dispute "arising out of or relating" to, amongst other things, "any Tile product or service and its marketing" and "the relationship between [Plaintiffs] and Tile." Klinkner Decl., Ex. B at 17, Ex. I at 21 (Section A). The October 2023 Terms specifically indicate that the scope of the provision "is intended to be interpreted broadly and includes any claim, dispute or controversy that arises out of or relates to" "any and all use of the [Tile] Products or Services," including claims under "any [] legal [] theory." *Id.*, Ex. E at 18 (Section XVIII.A). Here, the dispute concerns the Tile product, putting it squarely within the scope of these provisions.

### B. The Court Should Stay This Matter

The Court should not only compel Plaintiffs Broad and Doe to arbitration, but should also stay this case, for all parties, pending the completion of the arbitration. As an initial matter, under

---

[3] Specifically, all versions of the AAA Commercial and Consumer Arbitration Rules potentially at issue include the language: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* https://www.adr.org/index.php/active-rules; https://www.adr.org/index.php/ArchiveRules.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

1   Section 3 of the FAA, a stay is mandatory for the parties to the arbitration agreement. *See* 9 U.S.C
2   § 3 (court "***shall*** on application of one of the parties stay the trial of the action until [the] arbitration"
3   (emphasis added)); *Smith v. Spizzirri*, 144 S. Ct. 1173, 1173-74 (2024) (unanimously holding the
4   same). Because Plaintiffs Doe and Broad entered into arbitration agreements with the Tile
5   Defendants, as discussed above, this Court should compel arbitration and must stay the proceedings
6   as to their claims. *Id*.

7   However, the Court should also grant a discretionary stay for the Ireland Gordys' claims,
8   as well as a stay of all the Plaintiffs' claims against Defendant Amazon.com, Inc. ("Amazon"). "In
9   deciding whether to stay non-arbitrable claims, a court considers economy and efficiency, the
10  similarity of the issues of law and fact to those that will be considered during arbitration, and the
11  potential for inconsistent findings absent a stay." *Wolf v. Langemeier*, No. 2:09-CV-03086-GEB-
12  EFB, 2010 WL 3341823, at *8 (E.D. Cal. Aug. 24, 2010) (citation omitted). Further, in cases where
13  all parties are not signatories to an arbitration agreement, "a stay of all issues, and as to all parties,
14  is warranted when questions of fact common to all would be involved in both the litigation and the
15  arbitration." *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1114 (C.D. Cal. 2002) (citing *United
16  States v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)).

17  Here, the arbitration of Plaintiffs Broad and Doe's claims will involve several of the same
18  factual and legal disputes presented by the Ireland Gordys' claims. In fact, Plaintiffs' own
19  allegations contend as much, stating that "whether Defendants' acts and practices . . . amount to
20  the use of an electronic tracking device," "whether Defendants [allegedly] breached any duty owed
21  to Plaintiffs," and many other issues that involve "common" "questions of law or fact" would be
22  the same for all Plaintiffs. FAC ¶¶ 169(a)-(c). Similarly, the Plaintiffs' claims against Amazon are
23  subsumed by the claims against the Tile Defendants. It would be a waste of judicial resources to
24  simultaneously and redundantly litigate these issues in this Court when they will be resolved more
25  expeditiously and cost-effectively during arbitration.

26  Allowing the Ireland Gordys' claims against all Defendants or the Plaintiffs' claims against
27  Amazon to advance in this Court while arbitration proceeds poses the separate risk of inconsistent
28  injunctive relief. Again, **Plaintiffs** identify this very concern in their FAC, alleging: "[t]he

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

prosecution of separate actions by individual Class members [such as Plaintiffs] would create the risk of inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for Defendants." *Id*. ¶ 169(f). Plaintiffs may be right. Depending on how the litigation develops, dueling proceedings seeking Plaintiffs' requested injunctive relief could result in orders regarding the design or operation of the Tile product that are inconsistent or even mutually exclusive.

Courts in this circuit consistently grant stays in these circumstances. *See*, *e.g.*, *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1304 (N.D. Cal. 2018) (denying the motion to compel arbitration for several plaintiffs, but staying entire action pending the completion of arbitration); *Wolf*, 2010 WL 3341823, at *8 (staying all claims by all plaintiffs even though only five of thirteen agreed to arbitrate, because remaining plaintiffs "allege the same claims as the contracting Plaintiffs, against the same Defendants"); *Morales v. Lexxiom, Inc.*, CV 09-6549 SVW (DTBx), 2010 WL 11507515, at *11-12 (C.D. Cal. Jan. 29, 2010) (similar); *Bischoff*, 180 F. Supp. 2d at 1114 (staying consumer class action for defendants with non-arbitrable claims, pending the result of arbitration between plaintiffs and one defendant, to avoid duplicative litigation). Here too, the Court should take Plaintiffs at their word, as the court did in *Morales*. That court explained "because [Plaintiffs] seek a class action," their "Complaint contains nearly two pages explaining that common issues are predominant . . . ." 2010 WL 11507515, at *11. The court found it should "accept their assertion that the various claims are interrelated" when deciding whether to stay the entire case pending arbitration involving certain parties. *Id*. Likewise here, Plaintiffs cannot avoid the consequences of their pleadings. The Court should stay the entire case, pending arbitration of Plaintiffs Broad and Doe's claims.

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order enforcing Plaintiffs' agreement to arbitrate and stay the case.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL

1  Dated: June 7, 2024          COOLEY LLP

By: /s/ Jeffrey M. Gutkin
    Jeffrey M. Gutkin

Attorney for Defendants
Tile, Inc. and Life360, Inc.

303452288

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

TILE DEFENDANTS' MOTION TO
COMPEL ARBITRATION
CASE NO. 3:23-CV-04119-RFL