**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
2450 Colorado Ave., Suite 100E
Santa Monica, California 90404
Tel: (310) 396-9600
Fax: (310) 396-9635

**wh LAW**
David Slade
slade@wh.law
Brandon Haubert
brandon@wh.law
Jessica Hall
jessica@wh.law
1 Riverfront Place, Suite 745
North Little Rock, AR 72114
Telephone:  501.891.6000
Facsimile:  501.222.3027

*Attorneys for Plaintiffs individually and*
*on behalf of all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON IRELAND-GORDY and STEPHANIE IRELAND GORDY, MELISSA BROAD, and JANE DOE individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TILE, INC., LIFE360, INC., and AMAZON.COM, INC., <br><br> Defendants. | Case No. 3:23-CV-04119-RFL <br><br> **PLAINTIFFS' REVISED OPPOSITION TO DEFENDANTS TILE, INC. AND LIFE360, INC.'S MOTION TO COMPEL ARBITRATION** <br><br> Date: August 27, 2024 <br> Time: 10:00 a.m. <br> Judge: Rita F. Lin <br> Dept.    15 <br> Trial Date:  TBD <br> Date Action Filed: August 14, 2023 |

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ iii

I.    INTRODUCTION ................................................................................................................ 1

II.    BACKGROUND .................................................................................................................. 1

    A.   Plaintiff Broad ........................................................................................................ 2

    B.   Plaintiff Doe ........................................................................................................... 3

III.   ARGUMENT ....................................................................................................................... 4

    A.   Gateway arbitrability issues, including formation, validity, and scope, should be decided by this Court. ............................................................................................. 4

        1.   Plaintiffs Broad and Doe are not bound by the October 2023 Terms ................ 4

        2.   The February 2021 and January 2023 Terms do not delegate arbitrability to an arbitrator ........................................................................................................ 6

    B.   Plaintiffs' claims are outside the scope of the January 2021 and February 2023 Arbitration Clauses ................................................................................................. 9

    C.   The January 2021 and February 2023 Arbitration Clauses Are Unenforceable Due To Unconscionability ................................................................................... 10

        1.   The Agreement Has A High Degree of Substantive Unconscionability ............ 11

        2.   The Agreement Has A High Degree of Procedural Unconscionability .............. 13

    D.   There is no basis for a mandatory or discretionary stay, and none is warranted ..... 14

IV.   CONCLUSION .................................................................................................................. 15

1

## <u>**TABLE OF AUTHORITIES**</u>

2

**Cases**                                                                           *Page*

*Alkutkar v. Bumble Inc.*
    2022 U.S. Dist. LEXIS 162287 (N.D. Cal. Sep. 8, 2022) ................................ 6

*Berman v. Freedom Fin. Network, LLC*
    30 F.4th 849 (9th Cir. 2022) ...................................... 5

*Brennan v. Opus Bank*
    796 F.3d 1125 (9th Cir. 2015) ................................ 4, 7

*Cal. Crane Sch., Inc. v. Google LLC*
    621 F. Supp. 3d 1024 (N.D. Cal. 2022) ...................... 15

*Cook v. University of Southern California*
    102 Cal.App.5th 312 (2024) ...................................... 12

*Esparza v. SmartPay Leasing, Inc.*
    2017 U.S.Dist.LEXIS 164014 (N.D.Cal. Oct. 3, 2017) ..................... 11

*G.G. v. Valve Corporation*
    799 Fed. Appx. 557 (9th Cir. 2020) ............................ 7

*Galilea, LLC v. AGCS Marine Ins. Co.*
    879 F.3d 1052 (9th Cir. 2018) .................................... 7

*Garcia v. Cent. Coast Rests., Inc.*
    2019 U.S. Dist. LEXIS 162588 (N.D. Cal. Sep. 23, 2019) ............... 5

*Goceri v. Amazon.com, Inc.*
    2024 U.S. Dist. LEXIS 41667 (N.D. Cal. Mar. 8, 2024) ................ 4

*Gray v. SEIU*
    2020 U.S. Dist. LEXIS 259980 (N.D. Cal. Aug. 5, 2020) ............... 15

*Greenberg v. Amazon.com, Inc.*
    2021 U.S. Dist. LEXIS 256409 (N.D. Cal. May 17, 2021) ............... 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*
    586 U.S. 63 (2019) ................................................... 7

*In re Jiffy Lube Int'l, Inc.*
    847 F.Supp.2d 1253 (S.D.Cal. 2012) ......................... 12

*In re Tesla Advanced Driver Assistance Sys. Litig.*
    2023 U.S. Dist. LEXIS 176556 (N.D. Cal. Sep. 30, 2023) ............ 8, 9

*Ingalls v. Spotify USA, Inc.*
    2016 U.S. Dist. LEXIS 157384 (N.D. Cal. Nov. 14, 2016) ......... 7, 12, 13

*Ingle v. Circuit City Stores, Inc.*
    328 F.3d 1165 (9th Cir. 2003) ................................... 11

*Lockyer v. Mirant Corp.*
    398 F.3d 1098 (9th Cir. 2005) .......................................................................................... 15

*Love v. Equifax Info. Servs., LLC*
    2023 U.S.Dist.LEXIS 197388 (C.D.Cal. Oct. 30, 2023) ................................................ 11

*Milliner v. Bock Evans Fin. Counsel, Ltd.*
    114 F. Supp. 3d 871 (N.D.Cal. 2015) .............................................................................. 14

*O'Donovan v. Cashcall, Inc.*
    2009 U.S.Dist.LEXIS 53895 (N.D.Cal. June 24, 2009) .................................................. 14

*Sanchez v. Valencia Holding Co., LLC*
    353 P.3d 741 (Cal. 2015) ................................................................................................. 10

*Savage v. Citibank N.A.*
    2015 U.S.Dist.LEXIS 62343 (N.D.Cal. May 12, 2015) ................................................. 11

*Sellers v. Bleacher Report, Inc.*
    2023 U.S. Dist. LEXIS 131579 (N.D. Cal. July 28, 2023) ............................................... 6

*Sifuentes v. Dropbox, Inc.*
    2022 U.S. Dist. LEXIS 125273 (N.D. Cal. June 29, 2022) ......................................... 5, 6

*Slaten v. Experian Info. Sols., Inc.*
    2023 U.S. Dist. LEXIS 158867 (C.D. Cal. Sep. 6, 2023) ................................................. 7

*Thomas v. Cricket Wireless, LLC*
    506 F. Supp. 3d 891 (N.D.Cal. 2020) ........................................................................ 10, 11

*Ting v. AT&T*
    319 F.3d 1126 (9th Cir. 2003) .......................................................................................... 13

*Travelers Indem. Co. v. Premier Organics, Inc.*
    2017 U.S. Dist. LEXIS 161282 (N.D. Cal. Sep. 29, 2017) .............................................. 10

*Victoria v. Superior Court*
    40 Cal. 3d 734 (1985) ...................................................................................................... 10

**Other**
9 U.S.C. § 2 ........................................................................................................................... 10

## I.     INTRODUCTION

Defendants move to compel arbitration of the claims of two of the four named plaintiffs in this case—Plaintiff Melissa Broad ("Plaintiff Broad") and Plaintiff Jane Doe ("Plaintiff Doe") and to stay the claims of the remaining Plaintiffs.[1] Defendants' Motion (ECF 33) is based on a clause in Tile's Terms of Service ("Terms"), but several versions of the Terms, spanning several years, are in play. *See* Klinkner Decl. (ECF 34). Defendants contend that Plaintiff Broad agreed to Tile's January 2021 Terms when she created a Tile account and that Plaintiff Doe agreed to Tile's February 2023 Terms when she created a Tile account, but they further aver that Tile's October 2023 Terms—which were revealed via mass email—supersedes any prior Terms and govern the instant dispute. None of these require Plaintiffs to arbitrate their claims against Tile. At the threshold, the October 2023 Terms do not apply, as neither Plaintiff assented to them.  And neither the January 2021 or the February 2023 Terms require Plaintiffs Broad or Doe to arbitrate their claims against Tile, because the claims at issue are outside of the scope of any arbitration clause that may have been formed between Plaintiffs and Tile.  To the extent that any agreement *could* be said to govern these claims, it would be unconscionable and unenforceable. This Court that should hold that Tile's Motion stems from an impermissible interpretation of the law.[2]

## II.     BACKGROUND

This case arises from the design, marketing, manufacturing, and sale by Defendants of a device known as a Tile Tracker, which is small enough to be planted almost anywhere. ECF 32 ¶27. These devices created concern in the media as early as 2013 due to their suitability for use by stalkers. ECF 32 ¶¶33-46. This danger multiplied exponentially in 2021, when Tile teamed up with Amazon Sidewalk network products to expand the reach and efficacy of the Trackers, resulting in a network that now reaches 90% of the U.S. population. ECF 32 ¶¶65-66.

Defendants created a product capable of finding almost anyone anywhere, and they did so without creating effective safety precautions. Then, Defendants presented this product to stalkers

---

[1] Amazon cannot compel any Plaintiff's claims to arbitration in the litigation, and no Defendant moves to compel the claims of Plaintiffs Shannon Ireland-Gordy or Stephanie Ireland Gordy to arbitration, and their claims thus remain properly before this Court.

[2] Separate Defendant Amazon.com, Inc. has joined the Tile Defendants' Motion. ECF 35. Plaintiffs' instant opposition responds to that motion concurrently.

by marketing it on pornographic and other questionable websites, obfuscating legal process in the context of stalker lawsuits, and blocking access to courts through unconscionably broad and confusing arbitration agreements which they claim consumers accepted merely by accessing their website or opening an app. *See* ECF 32 ¶¶7, 40, 52, 97-115.

The January 2021 Terms and the February 2023 Terms read identically:

> All disputes, claims or controversies arising out of or relating to this Agreement, any Tile product or service and its marketing, or the relationship between you and Tile ("Disputes") shall be determined exclusively by binding arbitration. This includes claims that accrued before you entered into this Agreement. The only Disputes not covered by this Section are claims (i) regarding the infringement, protection or validity of your, Tile's or Tile's licensors' trade secrets or copyright, trademark or patent rights; (ii) if you reside in Australia, to enforce a statutory consumer right under Australia consumer law; and (iii) brought in small claims court. ECF 34-2 at 18; ECF 34-9 at 22-23.

The arbitration clause in the October 2023 Terms, implemented after this litigation, reads:

> The term "Disputes," as used in this section, is intended to be interpreted broadly and includes any claim, dispute, or controversy between us that arises out of or relates to this Agreement, this Section 18 and/or any and all use of the Products or Services whether based in contract, statute, regulation, ordinance, tort (including fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory, and includes all threshold issue of arbitrability including the validity, enforceability or scope of this Section 18. The only Disputes excluded from this obligation to arbitration are: (1) claims that could be brought in small claims court; and (2) Company claims for injunctive or other equitable relief. ECF 34-5 at 19.

Defendants alerted accountholders of the October 2023 Terms through a mass email which does not mention "arbitration" at all (ECF 34-7). Broad never saw that email until January 2024 when she found it in her spam folder. Broad Decl. ¶14. Doe never saw that email at all. Doe Decl. ¶10.

**A. Plaintiff Broad**

Plaintiff Broad was stalked via a Tile Tracker from 2021 to 2023, if not longer. ECF 32 ¶¶ 119-133. Broad Decl. ¶6. With the help of her family, she discovered and removed two Tile Trackers hidden in her vehicle in March 2023. ECF 32¶ 130; Broad Decl. ¶6. One of the Tile Trackers was purchased by her and was associated with her Tile account, to which her stalker had joint access. Broad Decl. ¶¶5-6. The other Tile Tracker was *not* purchased by her and was *not* associated with her Tile account or any other Tile account to which she has ever had access. *Id*. ¶6. Desperate to help, Plaintiff Broad's father devised a plan to help his daughter in which he drove

1    around with the discovered Tile Trackers while she escaped through a shopping mall. ECF 32

2    ¶¶131-32. Plaintiff Broad then moved in with her family and laid low. Yet her stalker continues to

3    call and harass her using blocked or unknown phone numbers. Broad Decl. ¶7. She continues to

4    suffer from fear, anxiety, and depression from being tracked. ECF 32 ¶133; Broad Decl. ¶7.

5            When Broad created her Tile account in 2021, she did not contemplate that she was

6    releasing her right to hold Tile accountable for conduct relating exclusively to someone else's use

7    of Tile devices. Broad Decl. ¶¶3, 15.  She was able to create her Tile account without opening the

8    Terms at all. *Id*. ¶¶3, 14. Broad has no recollection of subscribing to a "Premium" package and

9    suspects that it was her stalker who did so. *Id*. ¶4. She has taken no affirmative action to maintain

10   her Tile account. *Id*. ¶13. Her Tile subscription renews and is billed automatically. *Id*. She has not

11   used her Tile device or account for any purpose other than to combat her stalker since before 2023.

12   *Id*. ¶9.  The only reason she has not closed her account is due to the instruction of law enforcement.

13   *Id*. ¶¶ 8-9, 13. She hasn't had physical possession of her own Tile devices since July 2023 when

14   she surrendered them to the police and has no knowledge of what action the police may have taken

15   with the Tile devices. *Id*. ¶¶8-9, 11, 13. Broad opened the Tile app in January 2024 for legal reasons

16   but does not recall "connect[ing] a smart home device to one of her Tiles" and does not believe she

17   did so. *Id*. ¶¶11-12. She also does not recall opening the Tile app in April 2024 and does not believe

18   she did so, although she frequently asks friends and family to confirm that her phone is not sharing

19   location data and does not know if they open or trigger the Tile app in doing so. *Id*. ¶¶10-12.

20           **B.  Plaintiff Doe**

21           Doe got her Tile through a Life360 promotional offer in or around July 2023 in which she

22   would receive a free Tile Tracker if she paid Life360 for a month subscription. Doe Decl. ¶2. She

23   did not open it immediately, and eventually her Tile app offloaded from her phone as a result of

24   nonuse. *Id*. ¶4. When Doe became suspicious that she was being stalked in March 2024, she sought

25   help from the police and Tile, downloading various mobile apps to try to evade her stalker. *Id.* ¶5;

26   ECF 32 ¶¶135-51. She re-downloaded the Tile mobile app at that time, specifically to use Tile's

27   Scan and Secure feature to try to locate the device her stalker used. Doe Decl. ¶5; ECF 32 ¶137.

28   She had to open the Tile app to use Scan and Secure but did not have to login. Doe Decl. ¶6. The

Scan and Secure feature suggested that someone had planted a Tile Tracker in her vehicle, but she was not able to find it. *Id.* ¶7; ECF 32 ¶139. It was not until she removed the entire back seat of her vehicle several days later that Doe found the planted Tile Tracker hidden in the portion of her vehicle's frame that separates the cabin from the trunk. *Id.* ¶8; ECF 32 ¶¶152-53. She destroyed it immediately. Doe Decl. ¶8. Doe did not purchase the Tile Tracker she found hidden in her vehicle. Doe Decl. ¶ 9. Doe remains fearful that she is still being tracked. ECF 32 ¶156. When she created a Tile account, she did not contemplate that she was releasing her right to file a lawsuit relating to someone else's misuse of a Tile she did not purchase or control. Doe Decl. ¶¶3, 11.

### III.    ARGUMENT

### A. Gateway arbitrability issues, including formation, validity, and scope, should be decided by this Court.

Gateway issues presented by a purported arbitration agreement (namely, formation, validity, and scope) should be decided by a court. *See Goceri v. Amazon.com, Inc.,* 2024 U.S. Dist. LEXIS 41667, *5 (N.D. Cal. Mar. 8, 2024). There may be an exception to this rule where parties clearly and unmistakably delegate gateway issues to an arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). But not all gateway issues are delegable. While validity and arbitrability may be delegated, issues of formation cannot. *See Goceri*, 2024 U.S. Dist. LEXIS 41667, at *5 (citation omitted). Each of these gateway issues is at play here.

### 1.    Plaintiffs Broad and Doe are not bound by the October 2023 Terms.

Tile asserts that Plaintiffs are bound by the arbitration clause in the Terms hyperlinked to the October 26, 2023 mass email that Defendants claim to have sent to all Tile users, including Plaintiffs Broad and Doe. *See* Motion at 4-6; ECF 34 ¶11. Prior arbitration clauses in the January 2021 and February 2023 Terms stated: "Tile will not enforce material changes to this section in the future unless you expressly agree to them." ECF 34-2, §25; ECF 34-9 at 24. The October 2023 mass email included a hyperlink to the October 2023 Terms and advised recipients that their use of the Tile app or mere access to the Tile or Life360 website after November 26, 2023, constituted agreement to the new Terms. Neither Broad nor Doe expressly or impliedly agreed to the October 2023 Terms, and thus Tile may not enforce them in this action. Doe did not receive the October 26,

1   2023 email (Doe Decl. ¶10) and Broad only found the email in January 2024, in her spam folder,

2   when searching for case-related documents for her attorneys (Broad Decl. ¶14). Broad has not used

3   her Tile app since before October 2023—having handed all of her Tile Trackers to law enforcement

4   as evidence in her case against her stalker—and only maintains her Tile account in order to comply

5   with police instruction. *Id*. ¶¶8, 11. Doe only accessed the Tile app in March of 2024 (which did

6   not require logging into her account) so she could use Tile's Scan and Secure feature to try to detect

7   the Tile her stalker planted in her vehicle. Doe Decl. ¶¶5-8. She attempted to close her Tile account

8   in April 2024, which required her to login to the Tile app. *Id.* ¶13. There are no indicia of contract

9   formation.

10         Courts look to state-law principles governing the formation of contracts when deciding

11   whether an agreement to arbitrate exists. *Berman v. Freedom Fin. Network*, *LLC,* 30 F.4th 849, 855

12   (9th Cir. 2022). Mutual assent is an essential element of any contract. *Garcia v. Cent. Coast Rests.,*

13   *Inc.,* 2019 U.S. Dist. LEXIS 162588, *7 (N.D. Cal. Sep. 23, 2019). In the Ninth Circuit, a consumer

14   who receives electronic notice of contractual terms assents to them only if: (1) the consumer is

15   provided reasonably conspicuous notice of the terms, and (2) "the consumer ***takes some action***,

16   ***such as clicking a button or checking a box, that unambiguously manifests his or her assent*** to

17   those terms." *Berman* at 856 (emphasis added). Defendants' mass email (which neither Plaintiff

18   was made aware of prior to seeking legal representation) coupled with Plaintiffs' purported "use"[3]

19   of the Tile app does not meet this standard. In *Sifuentes v. Dropbox, Inc.*, Judge Gilliam denied the

20   defendant's motion to compel arbitration based on a similar theory. 2022 U.S. Dist. LEXIS 125273,

21   *10-11 (N.D. Cal. June 29, 2022). There, the defendant modified its terms of service and sent a

22   mass email to its users explaining the addition of a mandatory arbitration clause. *Id.* at *11. Because

23   the defendant put nothing in the record indicating either 1) the plaintiff could not use the

24   defendant's service until the plaintiff had indicated his assent to the new terms, 2) the plaintiff

25   would have been advised of the new terms while using the defendant's services, or 3) the defendant

26   ever logged whether the plaintiff had opened its email, there was no manifestation of assent. *Id.*

27

28   _____

[3] Defendants contend that "use" only requires opening the app, which could occur by inadvertently touching one's phone screen, for example. *See* ECF 34 ¶¶12, 18.

This was true regardless of whether the email itself constituted reasonably conspicuous notice, and the plaintiff's ongoing use of the defendant's service was irrelevant. *Id.* The same is true here. Defendants offer no evidence (1) that Plaintiffs could not use the Tile app after October 26, 2023 without affirmatively indicating their assent to the October 2023 Terms; (2) that Plaintiffs were advised of the new Terms while using the Tile app; or (3) that Plaintiffs ever opened the October 2023 email. Defendants' argument fails under *Sifuentes* and *Berman*. By specifically referencing the addition of the mandatory arbitration agreement in the text of its mass email, *Sifuentes* 2022 U.S. Dist. LEXIS 125273, at *10, the defendant in *Sifuentes* did more to establish inquiry notice than Defendants did here and still fell short. ECF 34 ¶11 (containing no mention of arbitration).

There is no manifestation of assent when a defendant fails to prove that the email was sent to and received by the plaintiff. *Alkutkar v. Bumble Inc.,* 2022 U.S. Dist. LEXIS 162287, *17 (N.D. Cal. Sep. 8, 2022) ("Defendants' email record does not establish that plaintiff had actual or constructive knowledge of the updated Terms because…it has no record that the email was received or even opened."); *Sellers v. Bleacher Report, Inc.,* 2023 U.S. Dist. LEXIS 131579, *20 (N.D. Cal. July 28, 2023) ("[T]he email shows no recipient in the 'To:' field, so there is no evidence it was sent [or] that plaintiff received it."). Defendants offer nothing more than Mr. Klinkner's statement that the October 2023 email was sent to "all Tile users." ECF 34 ¶¶11, 17. Further, there was no subsequent action taken by either Broad or Doe that would be sufficient to indicate a willingness to be bound by any terms. Broad surrendered her Tile Trackers to the police long before October 2023 (Broad Decl. ¶8) and Doe only utilized the Tile app after October 2023 because in order to discover whether and how she was being stalked. (Doe Dec. ¶¶5-8).

## 2. The February 2021 and January 2023 Terms do not delegate arbitrability to an arbitrator.

Neither the January 2021 nor February 2023 Terms delegate threshold questions of arbitrability or scope to an arbitrator. Both read identically as follows:

> The arbitration shall be administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes ("AAA Consumer Rules"), both of which are available at the AAA website www.adr.org. Your arbitration fees and your share of arbitrator compensation shall be governed by the AAA Rules and, where appropriate, limited by the AAA Consumer Rules.

1

2    ECF 34-2 at 18-20; ECF 34-9 at 22-24. Defendants claim that this language delegates gateway

3    issues to an arbitrator. Mot. at 11, 16-17. But mere incorporation of AAA rules—with nothing

4    more—will not effectuate delegation when plaintiffs are ordinary consumers. In *Brennan v. Opus*

5    *Bank*, the Ninth Circuit held that incorporation of AAA rules constituted evidence of the parties'

6    intent to arbitrate arbitrability, but explicitly limited its holding to agreements between

7    sophisticated parties. 796 F.3d 1125, 1131 (9th Cir. 2015); *see also Galilea, LLC v. AGCS Marine*

8    *Ins. Co.,* 879 F.3d 1052, 1061 (9th Cir. 2018) (noting that *Brennan* limited its holding to agreements

9    between sophisticated parties). And, in *G.G. v. Valve Corporation*, an unpublished decision cited

10   by Defendants, the Ninth Circuit relied on *Washington* law in concluding that the parties' degree

11   of sophistication did not alter the import of *Brennan*.[4] 799 Fed. Appx. 557, 558 (9th Cir. 2020).

12           In *Ingalls v. Spotify USA, Inc.*, Judge Alsup explained that every district court in the Ninth

13   Circuit "to address the question since *Brennan* has held that incorporation of the AAA rules was

14   insufficient to establish delegation in ***consumer contracts involving at least one unsophisticated***

15   ***party***." 2016 U.S. Dist. LEXIS 157384, at *9 (N.D. Cal. Nov. 14, 2016) (emphasis added)

16   (collecting cases). Accordingly, Judge Alsup held that two "ordinary consumers who could not be

17   expected to appreciate the significance of incorporation of the AAA rules, did not clearly and

18   unmistakably intend to delegate the issue of arbitration to an arbitrator." *Id.* at *10. *See also Slaten*

19   *v. Experian Info. Sols., Inc.,* 2023 U.S. Dist. LEXIS 158867, *9 (C.D. Cal. Sep. 6, 2023) ("Plaintiff

20   appears to be an ordinary consumer rather than a sophisticated party, nor does [the defendant] argue

21   anything to the contrary. In such circumstances, incorporation of the AAA rules on its own does

22   not evince an intent to arbitrate questions of arbitrability.").[5]

23

24   ───────────────

     [4] Defendants also misconstrue Supreme Court precedent. In *Henry Schein, Inc. v. Archer & White*
25   *Sales, Inc.*, which involved a dispute between two presumably sophisticated parties, a dental
     equipment distributor and dental equipment manufacturer, the Court stated that it was,
26   "express[ing] no view about whether the contract at issue in [that] case in fact delegated the
     arbitrability question to an arbitrator." 586 U.S. 63, 71-72 (2019). *Henry Schein* does stand for the
27   proposition that if an agreement effectively delegates the arbitrability issue to an arbitrator, courts
     must respect the parties' decision. *See id.* at 65.
28   [5] It is true that some courts have held that incorporation of the AAA rules constitutes clear evidence
     of the parties' intent to arbitrate arbitrability regardless of the parties' level of sophistication, *e.g.,*

                                                        7     **PLAINTIFFS' REVISED OPPOSITION TO DEFENDANTS'**
                                                              **MOTION TO COMPEL ARBITRATION**
                                                              **CASE NO. 3:23-CV-04119-RFL**

In their sworn declarations, Plaintiffs indicate that even if they had received and reviewed the January 2021 or February 2023 Terms, they would not have understood the meaning, consequences, or import of the incorporation of the AAA's "Commercial Arbitration Rules" or "Supplementary Procedures for Consumer Related Disputes." Broad Decl. ¶¶15-16; Doe Decl. ¶¶11-12. This would be no less true had Plaintiffs navigated to the AAA website using the URL provided in the Terms. On the home page of www.adr.org, "Rules, Forms & Fees" is one of the seven tabs. After clicking on that tab, there are seven options under "Most Viewed."[6] One option is labeled "Commercial Arbitration Rules and Mediation Procedure," which links to a 49-page document[7], and another "Consumer Arbitration Rules," which links to a 38-page document.[8] Even if Plaintiffs had found their way to this page on the AAA website, the rules labels do not match up with the language in the Terms, which reference "Commercial Arbitration Rules" and "Supplementary Procedures for Consumer Related Disputes." And, unlike the arbitration agreement at issue in *Greenberg*, the Terms here would not have provided Plaintiffs with a toll-free AAA phone number had Plaintiffs wanted to receive assistance locating the relevant rules. *See Greenberg*, 2021 U.S. Dist. LEXIS 256409, at *20. Plaintiffs had no way of finding the applicable rules, navigating those rules, finding the delegation language, and understanding what that meant.[9]

There is another reason that the January 2021 and February 2023 Terms did not effectively delegate arbitrability. Where an agreement, by its own terms, leaves open the possibility that a court could decide arbitrability issues, there is no clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. *See In re Tesla Advanced Driver Assistance Sys. Litig.*, 2023 U.S. Dist. LEXIS 176556, *17 (N.D. Cal. Sep. 30, 2023) ("Although incorporation of the AAA rules may on its own constitute 'clear and unmistakable evidence' of the parties' intent to delegate

---

*Greenberg v. Amazon.com, Inc.*, 2021 U.S. Dist. LEXIS 256409, *17 (N.D. Cal. May 17, 2021), but Plaintiffs respectfully contend that such a holding is inconsistent with *Brennan*.
[6] *See* https://www.adr.org/Rules.
[7] *See* https://www.adr.org/sites/default/files/Commercial-Rules_Web.pdf.
[8] *See* https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf.
[9] Not even Defendants locate the purportedly applicable delegation language in the AAA rules. By way of a footnote, Defendants contend that "all versions of the AAA Commercial and Consumer Arbitration Rules potentially at issue" include language effectuating delegation of gateway issues. Motion at fn. 3. Rather than citing the location of that language, Defendants simply cite two obscure pages on the AAA website that list more than 200 active and archived rules.

arbitrability issues, the arbitration agreement here leaves open the possibility that a court could decide such issues too.").   In addition to incorporating the AAA rules, the January 2021 and February 2023 Terms also state as follows: "[i]f any part of these Terms *is determined to be invalid or unenforceable by a court of competent jurisdiction*, that provision will be enforced to the maximum extent permissible and the remaining provisions of these Terms will remain in full force and effect." *See* ECF 34-2 at 17; ECF 34-9 at 21-22 (emphasis added). This language is analogous to the language in *Tesla*, which defeated any showing of clear and unmistakable evidence of delegation. *Telsa*, 2023 U.S. Dist. LEXIS 176556, at *18 (the arbitration clause read, "If a court or arbitrator decides that any part of this agreement arbitrate cannot be enforced…").

**B.  Plaintiffs' claims are outside the scope of the January 2021 and February 2023 Arbitration Clauses.**

The arbitration clauses at issue are meant to govern claims arising from the *accountholder's* use of Tile products and cannot reasonably be read to address claims arising from unknown third parties and *their* use of separate Tile products. From start to finish, the Terms to which Plaintiffs Broad and Doe ostensibly agreed are (unsurprisingly) about the individual Tile customer's use of Tile products, applications, and services. The first sentence in the Terms refers to the individual's access or use of Tile applications and services. ECF 34-2; ECF 34-9. The first seven paragraphs deal with a lone Tile customer's downloading, installation, and use of the Tile app and services. ECF 34-2 §§1-7; ECF 34-9 §§1-7. Other covered topics include the type of content that customers are permitted to upload or post using Tile services, as well as Tile's hardware and product warranty provisions. ECF 34-2 §§10, 12-13, 18-19; ECF 34-9 §§10, 12-13, 18-19. At the very end of the Terms, Tile's arbitration clause states in relevant part that "[a]ll disputes, claims or controversies arising out of or relating to this Agreement, any Tile product or service and its marketing, or the relationship between you and Tile ('Disputes') shall be determined exclusively by binding arbitration. This includes claims that accrued before you entered into this Agreement." ECF 34-2 §25; ECF 34-9 at 22-24. Defendants lift the "all claims arising out of or relating to any Tile product or service and its marketing, or the relationship between [Plaintiffs] and Tile" language out of context and apply it to this litigation—a case involving claims that have nothing to do with *either*

Plaintiff's use of any Tile product, service, or application. Motion at 12. Contract language should be interpreted in context, rather than in isolation. *Travelers Indem. Co. v. Premier Organics, Inc.,* 2017 U.S. Dist. LEXIS 161282, *4 (N.D. Cal. Sep. 29, 2017). The Terms relate entirely to Tile customers' use of Tile applications, services, and products. The arbitration clause buried in those Terms, then, must be read in that context. While it is true that Plaintiffs have or had Tile accounts, their status as Tile account holders has virtually no relevance to this litigation, as their claims do not arise from their own purchase, use, or ownership of a Tile product, application, or service. Where a plaintiff's claims involve facts—such as the criminal acts of third parties—that could not have reasonably been intended to be covered by the parties' agreement, an arbitration clause does not encompass them. *See Victoria v. Superior Court,* 40 Cal. 3d 734, 745 (1985) (finding it "difficult to conclude that the parties intended and *agreed* that causes of action arising from [assault and rape of petitioner] would be within the scope of the arbitration clause"). Here, Plaintiffs suffered injuries because of Defendants' conduct in enabling Plaintiffs' **stalkers** to use Tile products and services to hunt, haunt, and terrorize Plaintiffs. Plaintiffs could have suffered these alleged injuries without having the Tile app on their phones or owning the devices. Plaintiffs' claims, therefore, are outside the scope of the January 2021 and February 2023 arbitration clauses.[10]

### C. The January 2021 and February 2023 Arbitration Clauses Are Unenforceable Due To Unconscionability.

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. One such ground is unconscionability. *Thomas v. Cricket Wireless, LLC* (N.D.Cal. 2020) 506 F. Supp. 3d 891, 903. An agreement is unenforceable if it is procedurally and substantively unconscionable, but both elements need not be present in the same degree. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 748 (Cal. 2015); *Ingalls,* 2016 U.S.Dist.LEXIS 157384, at *13. Defendants' arbitration agreements are corrupted with both substantive and procedural

---

[10] Further, because these are standardized contracts drafted by Defendants, any ambiguity in the language must be interpreted against Defendants. *See Victoria,* 40 Cal. 3d, at 747.

unconscionability, and even if Plaintiffs agreed to arbitrate (they didn't) and even if their claims interpreted to fall within the scope of the arbitration clause (they should not be), the Court should not enforce the agreement.

### 1. The Agreement Has A High Degree of Substantive Unconscionability.

Substantive unconscionability corrupts an agreement when its terms are unfairly one-sided. *E.g.*, *Ingle v. Circuit City Stores, Inc.* (9th Cir. 2003) 328 F.3d 1165, 1172. Defendants' arbitration agreement is tainted with substantive unconscionability for numerous reasons. **<u>First</u>** and foremost, the scope of claims captured by the literal language in the January 2021 and February 2023 arbitration clauses is unconscionably broad. Under Tile's interpretation, in addition to capturing every claim "arising out of or relating to this Agreement" or "the relationship between [Plaintiff] and Tile," the clause also purportedly captures all claims relating to "any Tile product or service and its marketing." No claim is exempt from its reach, no matter how unrelated it may be to the agreement or Plaintiffs' user account with Tile. Interpreting this clause literally to apply "to any and every claim arising between [Defendants] and its customers, even including employment and tort claims, with no limiting principle would render the clause impermissibly overbroad, and therefore inoperable." *Esparza v. SmartPay Leasing, Inc.* (N.D.Cal. Oct. 3, 2017) 2017 U.S.Dist.LEXIS 164014, at *7. Such a consequence would be "absurd" and would not reflect the parties' mutual intent. *Savage v. Citibank N.A.* (N.D.Cal. May 12, 2015) 2015 U.S.Dist.LEXIS 62343, at *8-9; *Thomas*, 506 F. Supp. at 901. "While courts in this district regularly enforce arbitration clauses with respect to claims that arise directly out of or are somehow connected to the service agreement containing the arbitration clauses," they do not enforce arbitration clauses "that are wholly divorced from the underlying service contract." *Thomas*, 506 F. Supp. 3d at 904. Plaintiffs are unaware of any precedent in this jurisdiction which would justify doing so here, where Plaintiffs' claims bear no direct relation to their own Tile tracking devices, user accounts, or services agreements. Defendants' "incredibly broad" arbitration agreement is unenforceable based on this reason alone. *Id.* at 903 (finding Waters' arbitration agreement unenforceable based exclusively on the breadth of her arbitrate agreement). Other districts concur. *See, e.g.*, *Love v. Equifax Info. Servs., LLC* (C.D.Cal. Oct. 30, 2023) 2023 U.S.Dist.LEXIS 197388, at *10.)

("Because Plaintiff is not required to arbitrate every conceivable claim but only those related to [his services], the Arbitration Agreement is not substantively unconscionable."); *In re Jiffy Lube Int'l, Inc.* (S.D.Cal. 2012) 847 F.Supp.2d 1253u, 1263 ("tort action arising from a completely separate incident could not be forced into arbitration—such a clause would clearly be unconscionable"). **<u>Second</u>**, the January 2021 and February 2023 arbitration agreements are substantively unconscionable due to their infinite durations. Not only do they reach into the past for "claims that accrued before you entered into this Agreement," but they also purportedly "survive termination of this Agreement." ECF 34-2; ECF 34-9. The Second District Court of Appeals recently affirmed that an arbitration agreement that "survived indefinitely following [an employee's] termination" is substantively unconscionable. *Cook v. University of Southern California* (2024) 102 Cal.App.5th 312, 325-26. **<u>Third</u>**, the January 2021 and February 2023 agreements are substantively unconscionable because they allow Defendants to make unilateral modifications. *See, e.g.*, *Ingalls*, 2016 U.S.Dist.LEXIS 157384, at \*16. (finding unconscionability because "[defendant] retained the right to unilaterally change the terms of the arbitration agreement"). Both the January 2021 and February 2023 agreements state that Defendants "may update these Terms from time to time, so please review them frequently" and "Tile will not enforce material changes to [the arbitration section] in the future unless you expressly agree to them." ECF 34-2; ECF 34-9. The Terms do not explain how, when, or where the Terms will be updated, but apparently contemplate that they will "become effective 30 days after posting on tile.com." Such one-sided terms that "grossly favor" party seeking to compel arbitration are substantively unconscionable because they "proscribe[] [the] ability to consider and negotiate the terms [of the agreement]." **<u>Fourth</u>**, the January 2021 and February 2023 agreements are substantively unconscionable because they attempt to keep all information relating to any arbitration confidential through an incoherent incorporation of some undefined set of AAA rules.[11] Courts have found that such attempts to maintain confidentiality "favor [the] company over an individual, because the various attorneys representing individual

---

[11] Depending on whether one references the consumer versus the commercial rules or the active versus the archived rules cited in Defendants' Motion (at fn. 3), the AAA Rules provide that they "will keep information about the arbitration private …"; that "[c]onsent awards will not be made available to the public …"; and that "[u]nless otherwise required …, the [AAA] shall keep confidential all matters relating to the arbitration or the award."

plaintiffs cannot learn from the full body of arbitration, while the limited set of attorneys representing the company can." *E.g.*, *Ingalls*, 2016 U.S.Dist.LEXIS 157384, at *16, *18. "Thus, [Defendants have] placed [themselves] in a far superior legal posture by ensuring that none of [their] potential opponents have access to precedent while [Defendants accumulate] a wealth of knowledge on how to negotiate the terms of [their] own unilaterally crafted contract." *Ting v. AT&T* (9th Cir. 2003) 319 F.3d 1126, 1152. And "the unavailability of arbitral decisions may prevent potential plaintiffs from obtaining the information needed to build a case of intentional misconduct or unlawful discrimination against [Defendants]." *Id.* That the confidential nature of the arbitration is not expressed within the four corners of the arbitration agreements only increases its unconscionability.

### 2.   The Agreement Has A High Degree of Procedural Unconscionability.

Procedural unconscionability encompasses oppression and unfair surprise. *Ingalls*, 2016 U.S.Dist.LEXIS 157384, at *13. Oppression is present when there is "an inequality of bargaining power that results in no real negotiation," and unfair surprise is present when the terms of an agreement are obfuscated. *Id.* Defendants' arbitration agreements suffer from both defects. **First**, Defendants' agreement is a mandatory adhesion contract, which unequivocally establishes some degree of procedural unconscionability due to zero bargaining power. *Ingalls* at 14; *Love* at *9. This inequality is apparent from the very first sentence of the January 2021 and February 2023 Terms, both of which state that "[b]y accessing or using the applications and services owned or operated by Tile, Inc., whether through our software app(s) or website (our 'Services'), you are accepting and agreeing to be bound by the terms and conditions set forth below (these 'Terms')." Thus, even if Plaintiffs had never created Tile accounts at all, they would nonetheless be bound by the arbitration agreement, merely by accessing Tile's website or mobile app and *prior* to clicking the "Sign Up" buttons. *See* ECF 34 ¶¶6, 14. This language conflicts with the language Defendants rely on to show contract formation. *See* ECF 34-1; ECF 34-8.[12] **Second**, although Defendants

---

[12] These circumstances are even more inequitable and confusing because terminating a Tile account or auto-renewal subscriptions and efforts to find a Tile tracker planted by a stalker through Tile's "Scan and Secure" feature all require use and access of Defendants' website or mobile app (and thereby purportedly constitute acceptance).

contend that the January 2021 and February 2023 Terms delegated the issue of arbitrability, their attempted method of doing so was confusing and effectively hidden. Language delegating the issue of arbitrability appears *nowhere* within the four corners of Defendants' January 2021 or February 2023 agreements. Instead, the agreements simply refer the reader to the AAA website to sort it out on their own. Notably, the Terms state, "The arbitration shall be administered by the [AAA] under its Commercial Arbitration Rules and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes ('AAA Consumer Rules'), both of which are available at the AAA website www.adr.org." ECF 34-2; ECF 34-9. Even if a consumer does venture to the AAA website, the average consumer (including Broad and Doe) has no way to determine which set of rules may be "appropriate" or to what degree one set of rules supplements another. Broad Decl. ¶16; Doe Decl. ¶12. **Third**, the January 2021 and February 2023 arbitration agreements are procedurally unconscionable because they are confusing and result in unfair surprise. *See Milliner v. Bock Evans Fin. Counsel, Ltd.* (N.D.Cal. 2015) 114 F. Supp. 3d 871, 879 ("confusing and conflicting" language "calls into question the level of notice provided to Plaintiffs"); *O'Donovan v. Cashcall, Inc.* (N.D.Cal. June 24, 2009) 2009 U.S.Dist.LEXIS 53895, at *20. AAA discontinued its so-called "Supplementary Procedures for Consumer Related Disputes" in 2014, *Ingalls,* 2016 U.S.Dist.LEXIS 157384, at *6, and anyone trying to decipher the January 2021 or February 2023 agreement must wade through myriad sets of rules on the AAA website to determine which active or archived rules apply and whether "commercial" versus "consumer" rules may apply. Defendants themselves are confused by this, as they cite (Motion at fn. 3) "all versions" of the AAA Rules "potentially at issue," including the consumer, commercial, active, and archived rules.

**D.  There is no basis for a mandatory or discretionary stay, and none is warranted.**

In the event that the Court grants Tile's Motion, it should not stay the remainder of this action. *No* Plaintiff has agreed to arbitrate her claims against Amazon, and even if the Court were to compel Broad's or Doe's claims against Tile to arbitration, Tile nonetheless concedes that the Ireland-Gordy Plaintiffs may file their claims in court. And when only some—but not all—parties in a litigation have claims that are subject to an arbitration agreement, whether to stay a proceeding

is discretionary.[13] *Cal. Crane Sch., Inc. v. Google LLC*, 621 F. Supp. 3d 1024, 1033 (N.D. Cal. 2022). When exercising its discretionary power to stay, courts weigh the "competing interests which will be affected by the granting or refusal to grant a stay," including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)). A principal goal of the litigation is to seek classwide injunctive relief to remedy the potentially fatal dangers associated with Tile Trackers, and each day they remain on the market in their current incarnation is another day that people around the country might be victimized. "[T]he possible damage which may result from the granting of a stay" weighs in favor of Plaintiffs. *Lockyer,* 398 F.3d at 1110.

Tile argues that failure to stay this action might result in inconsistent rulings, but as Judge Gilliam observed in a comparable context: "in a case like [this], that redundancy seems inevitable." *Cal. Crane Sch., Inc.*, 621 F. Supp. 3d at 1033. The real inquiry for this *Lockyer* factor is whether "the arbitrable claims predominate, or [whether] the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Id.* (quotation omitted). None of the arbitrator's findings in Plaintiff Broad's or Doe's arbitration would be binding on this Court or have any impact on the non-arbitrable claims of any of the Plaintiffs, who "will presumably need to eventually litigate the remaining non-arbitrable claims irrespective of whatever happens in the arbitration." *Id.*

## IV.    CONCLUSION

Tile's Motion should be denied in its entirety.

Dated:  July 18, 2024

**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**

_____

Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com

---

[13] However, the Ninth Circuit has expressed "a preference for proceeding with the non-arbitrable claims when feasible." *Gray v. SEIU*, 2020 U.S. Dist. LEXIS 259980, at *13 (N.D. Cal. Aug. 5, 2020) (citation omitted).

Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
2450 Colorado Ave., Ste 100E
Santa Monica, CA 90404
Tel: (310) 396-9600
Fax: (310) 396-9635

**wh LAW**
David Slade
slade@wh.law
Brandon Haubert
brandon@wh.law
Jessica Hall
jessica@wh.law
1 Riverfront Place, Suite 745
North Little Rock, AR 72114
Telephone:  501.891.6000
Facsimile:  501.222.3027

*Attorneys for Plaintiffs individually*
*and on behalf of all others similarly situated*

1

## CERTIFICATE OF SERVICE

2     I hereby certify that a true and correct copy of the foregoing document was filed with the

3 Court and electronically served through the CM-ECF system which will send a notification of such

4 filing to all counsel of record.

5

6 Dated: July 18, 2024                          **MILSTEIN JACKSON**

7                                               **FAIRCHILD & WADE, LLP**

8                                               _____
                                                Gillian L. Wade, State Bar No. 229124
9                                               gwade@mjfwlaw.com
                                                2450 Colorado Ave., Ste 100E
10                                              Santa Monica, CA 90404
                                                Tel: (310) 396-9600
11                                              Fax: (310) 396-9635

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28