**WADE KILPELA SLADE LLP**
Gillian L. Wade, State Bar No. 229124
gwade@waykayslay.com
Sara D. Avila, State Bar No. 263213
sara@waykayslay.com
Marc A. Castaneda, State Bar No. 299001
marc@waykayslay.com
2450 Colorado Ave., Suite 100E,
Santa Monica, CA 90404
Telephone: (310) 667-7273
Facsimile: (424) 276-0473

**WADE KILPELA SLADE LLP**
David Slade (*pro hac vice*)
slade@waykayslay.com
Lucy L. Holifield (*pro hac vice*)
lholifield@waykayslay.com
1 Riverfront Place, Suite 745,
North Little Rock, AR 72114
Telephone: (501) 417-6445
Facsimile: (424) 276-0473

*Attorneys for Plaintiffs and the proposed class*
*(Additional counsel listed on signature page)*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SHANNON IRELAND-GORDY and STEPHANIE IRELAND GORDY, MELISSA BROAD, and JANE DOE individually and on behalf of all others similarly situated,

Plaintiffs,

v.

TILE, INC., LIFE360, INC., and AMAZON.COM, INC.,

Defendants.

Case No. 3:23-CV-04119-RFL

**PLAINTIFFS' OPPOSITION TO TILE, INC. AND LIFE360, INC.'S MOTION TO DISMISS**

Judge: Rita F. Lin
Dept.: 15
Date: April 29, 2025
Time: 10:00 a.m.

Date Action Filed: August 14, 2023
Trial Date: TBD

# TABLE OF CONTENTS


I. INTRODUCTION AND BACKGROUND ....................................................1

II. ARGUMENT ....................................................1

A. The Ireland-Gordy Claims Are Not Barred By Statutes Of Limitations ....................1

i. The Ireland-Gordys face an ongoing threat of stalking ....................1

ii. The Ireland-Gordy claims did not accrue until April 2020 at earliest ....................3

iii. Equitable estoppel bars Tile's statutes of limitations defenses....................4

iv. Equitable tolling tolls the statutes of limitations....................6

B. Plaintiffs Properly Allege Claims Under California Law ....................8

i. California has significant contacts to Plaintiffs' claims ....................8

ii. Tile fails its burden of showing that Texas law applies under California's governmental interest analysis ....................9

1. Tile fails to show material differences between Texas and California law or true conflicts with respect to each claim....................9

2. Tile fails to show that the interest of Texas will be more impaired than California's if Texas law is not applied ....................12

C. Plaintiffs adequately allege violations of California law ....................13

D. Defendant Life360 is a proper defendant....................15

III. CONCLUSION ....................15

TABLE OF AUTHORITIES

*Acosta v. AMPU*
2017 U.S. Dist. LEXIS 214766 (C.D. Cal. Dec. 2017) .......... 6, 7

*A.J. v. LMND Med. Grp., Inc.*
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 2024) .......... 3

*Alkayali v. den Hoed*
2018 U.S. Dist. LEXIS 118304 (S.D. Cal. July 2018) .......... 13

*Aryeh v. Canon Business Solutions, Inc.*
55 Cal. 4th 1185 (2013) .......... 1

*Audenhove v. Cty. of Riverside*
2016 U.S. Dist. LEXIS 130782 (C.D. Cal. Sep. 2016) .......... 2

*Battuello v. Battuello*
64 Cal. App. 4th 842 (1988) .......... 4

*Bryan v. Apple Inc.*
2023 U.S. Dist. LEXIS 37332 (N.D. Cal. Mar. 2023) .......... 8

*Carpenter v. United States*
138 S. Ct. 2206 (2018) .......... 14

*Cervantes v. City of San Diego*
5 F.3d 1273 (9th Cir. 1993) .......... 6

*Cory v. Sutton*
2017 U.S. Dist. LEXIS 202033 (C.D. Cal. Aug. 2017) .......... 2

*Coufal Abogados v. AT&T, Inc.*
223 F.3d 932 (9th Cir. 2000) .......... 9

*Davis v. Facebook, Inc.*
956 F.3d 589 (9th Cir. 2020) .......... 11

*Doe v. Meta Platforms, Inc.*
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 9

*Ehret v. Uber Technologies, Inc.*
68 F. Supp. 3d 1121 (N.D. Cal. 2014) .......... 15

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*
926 F.3d 539 (9th Cir. 2019) .......... 8, 9

*Flack v. Nutribullet, L.L.C.*
2019 U.S. Dist. LEXIS 64400 (C.D. Cal. Apr. 2019) .......... 12

*Gianino v. Alacer Corp.*
846 F. Supp. 2d 1096 (C.D. Cal. 2012)....................11

*Gram v. Intelligender, LLC*
2010 U.S. Dist. LEXIS 153099 (C.D. Cal. Oct. 2010)....................9

*Gusman v. Cty. of San Mateo*
2021 U.S. Dist. LEXIS 119029 (N.D. Cal. June 2021)....................4, 6

*Hirsch v. Bank of Am.*
107 Cal. App. 4th 708 (2003)....................13

*Hopkins v. Kedzierski*
225 Cal. App. 4th 736 (2014)....................4, 6, 7

*Hsin Lin v. Solta Med., Inc.*
U.S. Dist. LEXIS 228901 (N.D. Cal. Dec. 18, 2024)....................10, 15

*Hughes v. Apple, Inc.*
723 F. Supp. 3d 693 (N.D. Cal. 2024)....................13

*Hughes v. Apple, Inc. ("Hughes I")*
U.S. Dist. LEXIS 46387 (N.D. Cal. Mar. 2024)....................10

*In re Google Inc. Gmail Litig.*
2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sep. 2013)....................12

*In re Meta Pixel Tax Filing Cases*
2024 U.S. Dist. LEXIS 53062 (N.D. Cal. Mar. 2024)....................9

*Kellman v. Spokeo, Inc.*
599 F. Supp. 3d 877 (N.D. Cal. 2022)....................9

*Khan v. 7-Eleven, Inc.*
2014 U.S. Dist. LEXIS 194828 (C.D. Cal. Nov. 2014)....................2

*Laredo v. City of Laredo*
2005 U.S. Dist. LEXIS 48058 (S.D. Tex. Apr. 2005)....................12

*Lau v. Gen. Digit. Inc.*
2024 U.S. Dist. LEXIS 81310 (N.D. Cal. Apr. 2024)....................3, 4

*Lyles v. Sangadeo-Patel*
225 Cal. App. 4th 759 (2014)....................11

*Malta-Espinoza v. Gonzales*
478 F.3d 1080 (9th Cir. 2007)....................1

*McDonald v. Aps*
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ....................13

*McPeters v. LexisNexis*
910 F. Supp. 2d 981 (S.D. Tex. 2012)....................12

*Nazem v. IBM*
2024 U.S. Dist. LEXIS 97267 (N.D. Cal. May 2024) ....................6, 7

*Netscape Communs. Corp. v. St. Paul Mercury Ins. Co.*
2010 U.S. Dist. LEXIS 156921 (N.D. Cal. July 2010)....................8, 12

*Nichols v. Covidien Lp*
2021 U.S. Dist. LEXIS 36764 (N.D. Cal. Feb. 2021) ....................10

*Opperman v. Path, Inc.*
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ....................8

*Orellana v. Barr*
967 F.3d 927 (9th Cir. 2020)....................1

*Patra v. Schlumberger Tech. Corp.*
2025 U.S. Dist. LEXIS 32157 (S.D. Tex. Feb. 2025)....................11

*Pepi Corp. v. Galliford*
254 S.W.3d 457 (Tex. App. 2007)....................11

*Philips v. Ford Motor Co.*
2015 U.S. Dist. LEXIS 88937 (N.D. Cal. July 2015)....................3

*Pointeast Pharma Consulting, Inc. v. Aktiengesellschaft*
2024 U.S. Dist. LEXIS 225464 (S.D. Tex. Dec. 2024) ....................11

*Provenz v. Miller*
102 F.3d 1478 (9th Cir. 1996)....................13

*Realnetworks, Inc. v. DVD Copy Control Ass'n*
264 F.R.D. 517 (N.D. Cal. 2009) ....................7

*Riordan v. Western Digit. Corp.*
2023 U.S. Dist. LEXIS 176546 (N.D. Cal. Sep. 29, 2023) ....................9

*Schaffer v. Litton Loan Servicing, LP*
2008 U.S. Dist. LEXIS 124461 (C.D. Cal. July 2008)....................4, 5

*Shoppers Corner, Inc. v. Hussmann Corp.*
2009 U.S. Dist. LEXIS 146613 (N.D. Cal. Sep. 2009) ....................4

*Stark v. Patreon, Inc.*
635 F. Supp. 3d 841 (N.D. Cal. 2022) ....................11

*Sullivan v. Oracle Corp.*
254 P.3d 237 (Cal. 2011)....................15

*Supermail Cargo, Inc. v. U.S.*
68 F.3d 1204 (9th Cir. 1995)....................4

*Tasion Communs. v. Ubiquiti Networks, Inc.*
2013 U.S. Dist. LEXIS 121207 (N.D. Cal. 2013) ....................12

*Teng Huang v. Mountainfield Props. LLC*
2023 U.S. App. LEXIS 409 (9th Cir. Jan. 2023) ....................13

*Transp. Ins. Co. v. TIG Ins. Co.*
202 Cal. App. 4th 984 (2012)....................3

*Urban v. Tesla, Inc.*
2023 U.S. Dist. LEXIS 184919 (N.D. Cal. Oct. 2023)....................8, 9

*Vu v. Prudential Prop. & Cas. Ins. Co.*
26 Cal. 4th 1142 (2001) ....................5

*Zamani v. Carnes*
491 F.3d 9990 (9th Cir. 2007)....................13

*Zinser v. Accufix Research Inst., Inc.*
253 F.3d 1180 (9th Cir. 2001) ....................9

**STATUTES**

Cal. Penal Code § 646.9(f)....................2

## I. INTRODUCTION AND BACKGROUND[1]

This case arises from the design, marketing, manufacture, and sale by Tile Defendants of a device known as a Tile tracker, which is small enough to be planted virtually anywhere and which helps stalkers locate people without their knowledge or consent. Amazon amplified this danger exponentially in 2021 when it teamed up with Tile to expand the reach and efficacy of the trackers through application of its Sidewalk network, resulting in an interconnected web of devices that can find almost anyone anywhere. Following this Court's order on Defendants' motion to compel arbitration as to Plaintiffs Broad and Doe, Tile and Life360 now move to dismiss the First Amended Complaint (ECF 32 the "FAC") as to the Ireland-Gordy Plaintiffs. ECF 77 (the "Motion"). As set forth below, each of the arguments raised in Tile's Motion is meritless, and the Motion should be denied in its entirety. Alternatively, Plaintiffs request leave to amend.

## II. ARGUMENT

### A. The Ireland-Gordy Claims Are Not Barred By Statutes Of Limitations.

#### i. The Ireland-Gordys face an ongoing threat of stalking.

Tile's challenge to the timeliness of the Ireland-Gordys' claims ignores that they remain at continued risk of being stalked by someone who Tile has repeatedly enabled, over a period of years, by hiding critical information in criminal and civil proceedings, and who Tile has further emboldened by introducing detection-proof trackers. FAC ¶¶59-63.[2] As set forth more fully in Plaintiffs' opposition to Amazon's motion to dismiss, the Ireland-Gordys adequately allege that Tile (and Amazon) have caused a plausible, ongoing, material threat to their safety. "Stalking is a…personal crime. The stalker often seeks a sense of power or control over his victim, usually through fear….[B]ecause ***stalking, by definition, requires repeated victimization***, it is intuitive that there is an increased opportunity for violence." *Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1086-87 (9th Cir. 2007) (Duffy, J. dissent) (emphasis added); *Orellana v. Barr*, 967 F.3d 927, 935

---

[1] Plaintiffs incorporate by reference the Facts section of their concurrently-filed Opposition to Defendant Amazon.Com, Inc's Motion to Dismiss.

[2] "The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1192 (2013).

(9th Cir. 2020) ("[t]he threat of violence, real or perceived, is almost always present in [stalking] cases; tragically, it is far from unheard of for a pattern of stalking to end in the stalker killing the stalked.") (alterations original). The *ongoing nature* of the threat is an element of the crime. One must demonstrate a "course of conduct" on the part of the defendant, meaning "two or more acts occurring over a period of time, however short, evidencing a continuity of purpose." Cal. Penal Code § 646.9(f); FAC ¶69 (stalking requires "patterns of behavior"). Such a course of conduct must establish a "credible threat," meaning one that is "made with the intent to place the [target] in reasonable fear for their safety…." *Id*. at § 646.9(g). The FAC amply describes a course of conduct sufficient to establish that Plaintiffs' claims remain timely, including being tracked by a Tile for months, if not years, (FAC ¶¶78-87, 117-18); receiving a menacing email; purchasing a bullet proof vest because the stalker carried a gun; finding their cars vandalized (*id*. ¶¶81-84); being chased by the stalker in traffic; enlisting the police to (unsuccessfully) order the stalker to leave Plaintiffs alone (*id*. ¶¶90-91); moving residences three times (*id*. ¶¶80, 94, 116); and, when Tile failed to respond to subpoenas and warrants, which resulted in the abandonment of criminal charges for lack of evidence, being sued by their stalker (*id*. ¶107). Further, two of the Tile trackers activated by the stalker at the same time as "SDG Jeep" remain unaccounted for. *Id*. ¶117; Declaration of Stephanie Ireland-Gordy (Ex. 1) ¶3. These trackers may have been planted in the Ireland-Gordys' effects before their most recent move, made to evade their stalker, which in turn could have revealed their new address. *Id*. Indeed, very recently an unknown assailant broke the lock off of their private residential fence—a development that bears resemblance to their stalker's past conduct. Ex. 1 ¶8. That Tile's "Anti-Theft" features have now *eliminated* Plaintiffs' ability to detect a tracker travelling with them only magnifies their risk. FAC ¶60. And, despite pleading with Tile to confirm whether any of the Tiles associated with their stalker's account were travelling with them and whether Tile deactivated their stalker's account, it has not. Ex. 1 ¶3. Courts have found a "credible threat" on far fewer allegations.[3] Plaintiffs continue to live in fear that their

[3] *Audenhove v. Cty. of Riverside*, 2016 U.S. Dist. LEXIS 130782, at *13-15 (C.D. Cal. Sep. 2016) (finding credible threat when defendant "repeatedly followed or harassed [a family]"); *Cory v. Sutton*, 2017 U.S. Dist. LEXIS 202033, at *8-9 (C.D. Cal. Aug. 2017); *Khan v. 7-Eleven, Inc.*, 2014 U.S. Dist. LEXIS 194828, at *12-13 (C.D. Cal. Nov. 2014)

stalker has or will find them (Ex. 1 ¶9). This ongoing injury is inextricably intertwined with Tile's—and Amazon's—ongoing conduct.

**ii. The Ireland-Gordy claims did not accrue until April 2020 at earliest.**

Tile is wrong that the Ireland-Gordys' claims accrued in March 2017 and ignores facts in the FAC regarding their diligent efforts to discover Tile's role in the stalking. A plaintiff may rely on the discovery rule to delay accrual by pleading "facts showing (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Lau v. Gen. Digit. Inc.*, 2024 U.S. Dist. LEXIS 81310, at *17 (N.D. Cal. Apr. 2024). "[A] claim accrues and the limitations period begins to run when a plaintiff has information of circumstances to put [her] on inquiry or if [she] has the opportunity to obtain knowledge from sources open to [her] supervision [at which point she] must conduct a reasonable investigation…." *Philips v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 88937, at *24-25 (N.D. Cal. July 2015) (cleaned up). This comprises a fact question "not suited for resolution on the pleadings." *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480, at *2-3 (N.D. Cal. Oct. 2024); *Transp. Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal. App. 4th 984, 986, 1012 ("we are hard pressed to think of more fact-specific issues than "accrual" and "tolling"). The FAC demonstrates that the Ireland-Gordys began investigating the circumstances surrounding the "SDG Jeep" tracker *immediately* upon discovery. FAC ¶87. The Houston police sent a subpoena to Tile before October 2017, to which Tile refused to respond. *Id.* ¶¶103-04. Then, the San Mateo police issued a warrant, to which Tile provided limited information relating only to the stalker's user ID, email address, and Tile device activation dates. *Id.* ¶¶99-102, 113 Not only did Tile not provide the requested location information, it stated that it had no such responsive information, essentially representing that it had not repeatedly transmitted their location to their stalker. *Id.* ¶100. The Ireland-Gordys could not and did not learn of Tile's role in the stalking until April 27, 2020 when their stalker's *employer* produced emails from Tile to the stalker, which demonstrated Tile had been sending Plaintiffs' location data directly to their stalker. Ex. 1 ¶6; FAC ¶¶108-09. Even then, Tile continued to represent to Plaintiffs that no location history or devices were associated with their stalker's Tile account, having done so as recently as May 12, 2021. Ex. 1 ¶7, Ex. A. Because the FAC establishes that the Ireland-Gordys could not have

discovered their claims as to Tile before April 2020 (at the earliest), their claims should survive. *Lau*, 2024 U.S. Dist. LEXIS 81310, at *16-17 ("complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim").

**iii. Equitable estoppel bars Tile's statutes of limitations defenses.**

Tile should also be entirely estopped from asserting statutes of limitations because Tile induced the Ireland-Gordys' delay and enforcing statutes of limitations would only allow Tile to profit from its wrongdoing.[4] Equitable estoppel "focuses on the actions of the defendant." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1207 (9th Cir. 1995). "It is not concerned with the running and suspension of the limitations period, but [estops a party from asserting the defense when] his conduct has induced another into forbearing suit within the applicable limitations period" because "no man will be permitted to profit from his own wrongdoing in a court of justice." *Battuello v. Battuello* (1988) 64 Cal. App. 4th 842, 847-48. "[B]ecause equitable estoppel operates directly on the defendant…it might apply no matter how unequivocally the applicable limitations period is expressed." *Id.* To apply equitable estoppel here, (1) Tile must have known the facts; (2) reliance on Tile's conduct must have been reasonable under the circumstances; (3) the Ireland-Gordys must have been ignorant of those facts; and (4) they must have relied upon Tile's conduct to their detriment. *Hopkins v. Kedzierski* (2014) 225 Cal. App. 4th 736, 756; *Gusman v. Cty. of San Mateo*, 2021 U.S. Dist. LEXIS 119029, at *16 (N.D. Cal. June 2021). "[E]quitable estoppel requires a balancing of equities" and "presents factual issues not suitable for determination on the pleadings." *Gusman*, 2021 U.S. Dist. LEXIS 119029, at *17; *Hopkins*, 225 Cal. App. 4th at 745; *Shoppers Corner, Inc. v. Hussmann Corp.*, 2009 U.S. Dist. LEXIS 146613, at *8 (N.D. Cal. Sep. 2009). Affirmative misrepresentations or improper purpose is not necessary for a finding of estoppel;[5] concealment alone may suffice. *Gusman*, 2021 U.S. Dist. LEXIS 119029, at *19.

---

[4] Because California law applies to the Ireland-Gordys' claims as discussed below, California law also applies to Tile's defenses.

[5] Knowledge of improper purpose or intentional deceit may give rise to a finding of fraudulent concealment if timely notice is satisfied. *Schaffer v. Litton Loan Servicing, LP*, 2008 U.S. Dist. LEXIS 124461, at *35, 43 ("Equitable estoppel…is sometimes called fraudulent concealment," which rests on "a non-exhaustive list of factors, including: (1) the plaintiff's actual and reasonable

As to the first and third requirements, Tile knew that it had transmitted the Ireland-Gordys' location data to their stalker, but kept that information hidden at multiple, critical junctures. After receiving the first subpoena or warrant, Tile misled to the Houston police on or about October 16, 2017, by stating it could not identify the user associated with the "SDG Jeep" tracker; it then refused to comply with an out-of-state subpoena, requiring coordination between Houston and San Mateo police and causing more delay; then, Tile produced only two pages of limited information on April 23, 2018. FAC ¶¶100, 103-04; Ex. 1 ¶3. But, that information still did *not* include the requested geolocation information required to know whether the stalker had used a Tile to locate the Ireland-Gordys. FAC ¶100; Ex. 1 ¶3. Worse, Tile represented that it had no such responsive information, effectively concealing Tile's role in the stalking and any causes of action as to Tile. FAC ¶100. But Tile *did* possess such responsive and critical information as demonstrated by the Tile Emails, showing that Tile transmitted Plaintiffs' precise location to their stalker, as well as by the log data showing that the stalker's phone "pinged" Tile's servers over 16,000 times. FAC ¶108-09. Plaintiffs were not able to discover the Tile Emails until April 27, 2020, when stalker's *employer* produced it in the Civil Suit and were not able to discover the pings log data until December 19, 2019 when Tile produced it in a form that was totally incomprehensible. Ex. 1 ¶5.

The second and fourth elements—reasonable and actual reliance—depend "on a myriad of factual questions." *Vu v. Prudential Prop. & Cas. Ins. Co.* (2001) 26 Cal. 4th 1142, 1153; *Schaffer v. Litton Loan Servicing, LP*, 2008 U.S. Dist. LEXIS 124461, at *45 (C.D. Cal. July 2008). At minimum, discovery is warranted on this issue, but as noted above, the Ireland-Gordys were completely misled by Tile. Because of Tile's misrepresentations in response to multiple subpoenas and warrants, the Ireland-Gordy's criminal case against their stalker was abandoned for lack of evidence; they were targeted by their stalker in a Civil Suit that followed and lasted until June 2021; and Tile's wrongdoing and their claims against Tile were completely obscured. Because Tile

---

reliance…, (2) evidence of improper purpose [or intentional deception], and (3) the extent to which the purposes of the limitations period have been satisfied."). Improper purpose and reasonable reliance present fact questions, so "a defendant has an extremely difficult burden to show that [fraudulent concealment allegations are] barred as a matter of law." *Id.* at *44-45.

was the *only* party[6] possessing the key information needed, Plaintiffs' had no *choice* but to believe Tile's representations. Regardless, warrants and subpoenas are backed by authority of court; thus, the responses to such documents are categorically intended to induce reliance. Further, information provided in response to matters that "gravely affect" one's welfare favor a finding of reasonable reliance. *See Gusman*, 2021 U.S. Dist. LEXIS 119029, at *17. And, Tile's years-long campaign designed to lead consumers to believe that its devices are safe and will not support illegal tracking of humans only further supports the reasonableness of relying on its representations that it did not possess data reflecting same. FAC ¶¶35-37, 42-44.

**iv. Equitable tolling tolls the statutes of limitations.**

Equitable tolling should also toll the Ireland-Gordys' limitations periods here, as it is intended "to prevent unjust and technical forfeitures [when timely notice] has been satisfied." *Hopkins*, 225 Cal. App. 4th at 746 ("limitations period is tolled when an injured person has several legal remedies and, reasonably and in good faith, pursues one"); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) ("the doctrine will suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness."). Equitable tolling requires "[1] timely notice, [2] lack of prejudice to the defendant, and [3] reasonable and good faith conduct on the part of the plaintiff." *Nazem v. IBM*, 2024 U.S. Dist. LEXIS 97267, at *3-4 (N.D. Cal. May 2024). It requires a fact-intensive inquiry "not generally amenable to resolution on a Rule 12(b)(6) motion," in which "the sole issue is whether the complaint, [liberally construed], adequately alleges facts showing [the doctrine's] *potential* applicability." *Id*. at 1277. As to the first requirement, Tile does not argue that it lacked timely notice of the Ireland-Gordys' claims, nor can it. The Ireland-Gordys informed Tile immediately on March 10, 2017 that someone had suspiciously planted a Tile in their Jeep. FAC ¶87. Tile was noticed *again* no later than October 12, 2017, when its counsel engaged with police regarding the first subpoena or warrant. *Id.* ¶103; *Acosta v. AMPU*, 2017 U.S. Dist. LEXIS 214766, at *14 (C.D. Cal. Dec. 2017) (equitable tolling applied from date of subpoena receipt through date of resulting production). Tile was noticed *again* when it received a warrant

[6] If the Ireland-Gordys were stalked via additional Tiles beyond the discovery of "SDG Jeep," it is possible Amazon would also possess the requisite information. Either way, it is not the Ireland-Gordys who are able to access this information.

from the San Mateo Police in 2018, and *again* when it was served with more subpoenas during the Civil Suit from June 2019 to June 2021. FAC ¶¶107-10, 113. Each of these proceedings put Tile on notice of the need to investigate the facts forming the basis of the Ireland-Gordys' stalking claims. *Hopkins*, 225 Cal. App. 4th at 750 ("equitable tolling may apply even where the defendants in the two actions are not the same parties"); *Nazem*, 2024 U.S. Dist. LEXIS 97267 at *5 ("The key inquiry is equity, [which] should not elevate form over substance."). To the extent Tile asserts that the subpoenas and warrants did not provide adequate notice of the instant claims, it a fact-intensive issue that cannot be decided at this juncture. *See Cervantes*, 5 F.3d at 1276.

Because Tile had timely notice and then flouted its duty to preserve evidence, Tile cannot and does not argue that it will be prejudiced by defending the Ireland-Gordy claims. Tile has known since 2013 about the dangers inherent to its trackers and has made calculated representations to the public to minimize the appearance of same. FAC ¶¶34-38, 40-45. Though it *could* have done so on March 10, 2017, Tile *should* have taken steps to preserve all evidence associated with the stalker's Tile account no later than October 12, 2017, when its counsel engaged with police regarding the first subpoena. *Id.* ¶103; *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 264 F.R.D. 517, 524 (N.D. Cal. 2009) (preservation duty attaches when party should have known that evidence may be relevant to litigation). The subpoenas issued later during the Civil Suit, of course, gave rise to the same duty to preserve. But Tile informed Plaintiffs on July 29, 2021 that it did not take steps to preserve the data associated with their stalker's account. FAC ¶103. Thus, any prejudice Tile could even possibly attempt to claim was caused not by Plaintiffs, but its own reckless, if not intentional, spoliation. And while Tile makes much ado about the lapse of time here, Tile cannot show prejudice where the same underlying facts as to Tile are implicated across each of the subpoenas and warrants it dodged from 2017 to 2021. *Nazem*, 2024 U.S. Dist. LEXIS 97267 at *6 (finding "minimal prejudice" where defendant had notice of same "underlying facts [that] occurred seven years ago in 2017"). In satisfaction of the third requirement, the Ireland-Gordys filed their claims in August 2023 reasonably and in good faith (and, as explained in detail below, unquestionably within the four-year limitations period of their UCL and UE claims). Despite diligent efforts, it wasn't until April 27, 2020 that Plaintiffs discovered the Tile Emails, and even

then, Tile continued to represent that it did not have responsive geolocation information associated with the stalker's Tile account—without which the Ireland-Gordys remained unaware as to claims against Tile. Ex. 1 ¶¶6-7. Thus, the statute of limitations for all of the Ireland-Gordy claims should be tolled until April 27, 2020 at the earliest.

### B. Plaintiffs Properly Allege Claims Under California Law.

#### i. California has significant contacts to Plaintiffs' claims.

"Whether a nonresident plaintiff can assert a claim under California law is a constitutional question based on whether California has sufficiently significant contacts with the plaintiff's claims." *Opperman v. Path, Inc*., 87 F. Supp. 3d 1018, 1040 (N.D. Cal. 2014). Tile does not dispute, and there can be no doubt, that the significant contacts test is met here. Application of California law is constitutional where a defendant is headquartered in California, conducts a significant portion of its business in the state, designed the at-issue product in California, and made key marketing and product decisions in California. *Urban v. Tesla, Inc*., 2023 U.S. Dist. LEXIS 184919, at *8 (N.D. Cal. Oct. 2023) ("The claims here undoubtedly meet this...test, as Tesla was headquartered in California when it sold Urban his vehicle and it continues to conduct a significant portion of its business in the state."); *Bryan v. Apple Inc*., 2023 U.S. Dist. LEXIS 37332, at *4-5 (N.D. Cal. Mar. 2023) (significant contacts test satisfied where the defendant was a California company and developed the product and made product design and advertising decisions in California). Tile is headquartered in California and designed, marketed, and introduced the tracker into market in California. FAC ¶25. These allegations are more than enough to show significant contacts. Because Plaintiffs make this showing, Tile, as the proponent of foreign law, has the burden of demonstrating that Texas law should apply over California law. *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.),* 926 F.3d 539, 561 (9th Cir. 2019) ("By default, California courts apply California law 'unless a party litigant timely invokes the law of a foreign state,' in which case it is 'the foreign law proponent' who must 'shoulder the burden of demonstrating that foreign law, rather than California law.'") (quotations omitted); *accord Netscape Communs. Corp. v. St. Paul Mercury Ins. Co.,* 2010 U.S. Dist. LEXIS 156921, at *6 (N.D. Cal. July 2010).

**ii. Tile fails its burden of showing that Texas law applies under California's governmental interest analysis.**

To meet this burden, Tile must show that Texas law trumps California law under California's three-step governmental interest test. *See Espinosa*, 926 F.3d at 561. To start, a meaningful choice of law analysis is a rigorous, fact intensive inquiry. For this reason, it rarely is conducted at the motion to dismiss stage. *See Urban,* 2023 U.S. Dist. LEXIS 184919, at *8 ("Application of California's three-step governmental test requires a case- and fact-specific analysis that will seldom be amenable to conclusive resolution on a Rule 12(b)(6) motion."); *In re Meta Pixel Tax Filing Cases*, 2024 U.S. Dist. LEXIS 53062, *20 (N.D. Cal. Mar. 2024) (same) (citing *Urban); Riordan v. Western Digit. Corp.*, 2023 U.S. Dist. LEXIS 176546, *16 (N.D. Cal. Sep. 29, 2023) (same); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 894 (N.D. Cal. 2022) (deferring choice of law until class certification because discovery on the nexus between California and the defendant would impact the analysis); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079 (N.D. Cal. 2023) (denying motion to dismiss CIPA claim on extraterritoriality grounds and citing *Kellman* though choice of law had not been raised). Prematurity concerns aside, in the first step of the governmental interest analysis, Tile must identify the applicable rule under Texas law and show that it materially differs from California's. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). If Tile shows that the laws materially differ, the court then proceeds to step two, where Tile must show that a true conflict exists because Texas and California each has an interest in having its law applied under the circumstances of this case. *Coufal Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). The court progresses to the third step—which focuses on the "comparative impairment" of the interested jurisdictions—only if Tile shows that both Texas and California have a legitimate interest. *Id.*

1. <u>Tile fails to show material differences between Texas and California law or true conflicts with respect to each claim.</u>

Tile has the burden of showing material differences and resulting in true conflicts for each claim. This requires careful analysis, not generalized assertions. *Gram v. Intelligender, LLC*, 2010 U.S. Dist. LEXIS 153099, at *9 (C.D. Cal. Oct. 2010) (generalized assertions insufficient for step two of the governmental interest analysis). <u>**Negligence:**</u> Tile identifies one purported difference

between Texas law and California law—a "viable alternative design" requirement that supposedly exists in Texas, but not California. To start, this argument rests on Tile's mischaracterization of Count I as a negligent *design* claim. Mot. at 7. Plaintiffs assert a simple negligence claim. FAC ¶¶150-77.[7] What's more, even if the Court were to interpret Count I as a negligent design, California courts—like Texas courts, per Tile—use the reasonable alternative design test when evaluating such claims. *Nichols v. Covidien Lp*, 2021 U.S. Dist. LEXIS 36764, at *11 (N.D. Cal. Feb. 2021) (applying California law and stating that, "separate and distinct from the balancing test of negligence, is an inquiry into the availability of reasonable alternative design…"). Tile, then, fails to identify any real difference between Texas law and California law, material or otherwise. As a result, Tile fails to show any true conflict. **Strict Liability:** In California, "[r]isk-benefit and consumer expectation are alternative theories for establishing a cause of action for design defect strict liability." *Hsin Lin v. Solta Med., Inc.,* U.S. Dist. LEXIS 228901, at *26 (N.D. Cal. Dec. 18, 2024) (citation omitted). The feasibility of a safer alternative design is a consideration under the risk-benefit theory, which Plaintiffs have alleged. *Id.* at *32; FAC ¶183. Tile fails to explain how Texas's "safer alternative design" element of a design defect claim is materially different than California's identical risk-benefit consideration for a design defect claim. Nor does Tile argue that there is any true conflict, meaning that Texas and California each has an interest in having its "safer alternative design" element (Texas) or "safer alternative design" risk-benefit consideration (California) applied. **Unjust enrichment:** Instead of meeting its burden, Tile simply states that other courts in this district, including Judge Chhabria, have found material differences among states' unjust enrichment laws. Mot. at 7. However, Judge Chhabria's brief discussion of the variation among states' common law claims in *Hughes I* does not mention unjust enrichment. *Hughes v. Apple, Inc. ("Hughes I")*, 2024 U.S. Dist. LEXIS 46387, at *2-3 (N.D. Cal. Mar. 2024). And, unlike here, the plaintiffs in *Hughes I* resided in over twenty different states.[8] *Id.* The only purportedly material difference that Tile identifies between Texas and California law is that Texas

---

[7] Plaintiffs allege that Tile breached the ordinary duty of care covered by Section 1714(a) of the California Civil Code. FAC ¶171. Tile's breach arises not just from its design of the Tile tracker, but from its marketing and introduction of the tracker into the market. FAC ¶¶150-77.

[8] Further, *Mazza* was decided at the class certification stage.

"does not clearly recognize" unjust enrichment as a separate claim. Mot. at 7. California courts have divided on that question as well, though the better authority is that such a claim does exist. *Stark v. Patreon, Inc.,* 635 F. Supp. 3d 841, 857 (N.D. Cal. 2022). Texas courts, too, have found unjust enrichment to be an independent cause of action. *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App. 2007) ("Unjust enrichment is an independent cause of action."). Tile makes no attempt to compare the elements of an unjust enrichment claim in Texas[9] with California's elements, thereby failing to meet its burden at step one.[10] Having identified no material differences in California and Texas law, Tile does not and cannot articulate a true conflict. **Intrusion Upon Seclusion:** Tile fails to even identify the elements of an intrusion cause of action in Texas or California, thereby failing, again, to meet its burden under the first two steps of the governmental interest analysis. The two states have substantially similar formulations. *Compare Davis v. Facebook, Inc.*, 956 F.3d 589, 601 (9th Cir. 2020) *with Patra v. Schlumberger Tech. Corp.*, 2025 U.S. Dist. LEXIS 32157, at *6-7 (S.D. Tex. Feb. 2025). Tile does not argue otherwise. **UCL:** Tile argues that Plaintiffs' UCL claims "differ from consumer protection claims in other states in myriad ways" (Mot. at 7)—an irrelevant point because there are only two states involved in this analysis. And while Tile states that there are "no Texas-law claims that match exactly" with the UCL's elements or available remedies (*id.*), it fails to so much as cite any Texas statute. Instead, Tile states by footnote that the Texas consumer protection statute permits the recovery of damages and requires pre-suit notice, while the UCL does not. Tile does not meet its burden in the first two steps of analysis here by citing to a class certification decision referencing another litigant's "comprehensive nationwide analysis, detailing the significant variations in the states' consumer protection and fraud laws." *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1104 (C.D. Cal. 2012). Tile offers no analysis of its own. And "a mere difference with the law of the forum state is not enough to justify application of the law of a foreign jurisdiction—the difference must be

---

[9] In Texas, "'A party may recover…when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Pointeast Pharma Consulting, Inc. v. Aktiengesellschaft,* 2024 U.S. Dist. LEXIS 225464, at *15 (S.D. Tex. Dec. 2024).

[10] In California, "[t]he elements for a claim of unjust enrichment are 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" *Lyles v. Sangadeo-Patel* (2014) 225 Cal. App. 4th 759, 769 (citation omitted).

material." *Netscape Communs.*, 2010 U.S. Dist. LEXIS 156921, at *8-*9; *In re Google Inc. Gmail Litig.*, 2013 U.S. Dist. LEXIS 172784, at *71 (N.D. Cal. Sep. 2013) ("[O]n either party's theory of liability, the difference in state law…would not be a material difference."). **CIPA:** Tile's argument as to why the Texas wiretapping statute (which, again, Tile does not cite) materially differs from CIPA mirrors its unsupported UCL argument. Mot.at 8. Tile identifies no differences between the Texas statute and CIPA , failing once again to meet its burden. **Constitutional Right to Privacy:** Tile identifies one difference between a right-to-privacy claim under the constitutions of Texas and California—Texas's requirement that the plaintiff's deprivation of rights be caused by state action.[11] Mot. at 8. Tile fails to argue how this difference applies here or why it creates a true conflict.

2. Tile fails to show that the interest of Texas will be more impaired than California's if Texas law is not applied.

For each claim, Tile fails to meet its burden in the first two steps. The Court, then, need not proceed to step three. Nonetheless, in the final step of the governmental interest analysis, Tile again fails to meet its burden, relying instead on a generalized assertion about the "place of the wrong" having the predominant interest. Mot. at 8. Tile fails to so much as acknowledge California's interest in deterring wrongful conduct by its corporate citizens—an interest applicable to each of Plaintiffs' claims.[12] *Tasion Communs. v. Ubiquiti Networks, Inc.*, 2013 U.S. Dist. LEXIS 121207, *41 (N.D. Cal. 2013) ("As the California Supreme Court has recognized, states have an interest `in regulating conduct that occurs within its borders and applying its laws to corporations operating within its borders.") (quotation omitted). Other courts have found this interest to be the most compelling when weighed against other jurisdictions. *Flack v. Nutribullet, L.L.C.*, 2019 U.S. Dist. LEXIS 64400, *16 (C.D. Cal. Apr. 2019) (California had more compelling interest in having compensatory damages law applied in case involving negligence, strict liability, and UCL claims

---

[11] The rule in Texas is more nuanced. "Otherwise private conduct is 'state action' when the conduct can be 'fairly attributed to the government.'" *Laredo v. City of Laredo*, 2005 U.S. Dist. LEXIS 48058, at *9 (S.D. Tex. Apr. 2005) (citations omitted). This determination case-by-case. *McPeters v. LexisNexis*, 910 F. Supp. 2d 981, 989 (S.D. Tex. 2012). In the very case that Tile cites, the court held that e-filing through a third-party vendor could be considered a state action. *Id.* at 990-91.

[12] Notably, Tile refuses to accept subpoenas from out-of-state law enforcement, and instead claims it will respond only to subpoenas from California authorities. FAC ¶¶99-100.

by a foreign plaintiff against California corporation that engaged in wrongful conduct in California). The same is true here.

### C. Plaintiffs adequately allege violations of California law.

**Negligence and Strict Liability:** Tile's challenge applies the wrong state's law, rendering the entirety of its arguments and authority meritless. While Tile has waived any arguments as to the sufficiency of the pleadings under California law,[13] and therefore they are not subject to dismissal on Tile's Motion, even if Tile *had* raised arguments under the proper state's law, they would be meritless for the grounds articulated in Judge Chhabria's extensively-reasoned opinion in *Hughes v. Apple, Inc.*, 723 F. Supp. 3d 693, 700-11 (N.D. Cal. 2024) (denying tracking device manufacturer's bid to dismiss stalking victims' claims for negligence and risk-benefit-test product liability under California law). **Unjust Enrichment:** "To prevail on an unjust enrichment claim, a party must show 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" *Teng Huang v. Mountainfield Props. LLC*, 2023 U.S. App. LEXIS 409, at *2 (9th Cir. Jan. 2023). "The term 'benefit' connotes *any* type of advantage." *Hirsch v. Bank of Am.* (2003) 107 Cal. App. 4th 708, 722 (emphasis original). "While the paradigm case of unjust enrichment is one in which the benefit on one side of the transaction corresponds to an observable loss on the other, the consecrated formula 'at the expense of another' can also mean 'in violation of the other's legally protected rights,' without the need to show that the claimant has suffered a loss." *Alkayali v. den Hoed*, 2018 U.S. Dist. LEXIS 118304, at *15-16 (S.D. Cal. July 2018). Tile has received significant benefit—the sale of its Tile trackers—at the expense of Plaintiffs and class members. **Intrusion and Constitutional Right to Privacy:** Tile argues that Plaintiffs' intrusion and right to privacy claims[14] must fail because a stalker, and not Tile, placed the Tile tracker in Plaintiffs' effects. Yet, *Tile* is responsible for the software and hardware that identifies the location of a given tracker, via data that are either emitted (by the Tile tracker) or received and interpreted (through

---

[13] *See Zamani v. Carnes*, 491 F.3d 9990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief"); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("[R]aising of new issues and submission of new facts in [a] reply brief is improper").

[14] California "has moved toward treating [intrusion] and constitutional privacy inquiries as functionally identical, although the claims do continue to exist as separate claims with technically distinct elements." *McDonald v. Aps*, 385 F. Supp. 3d 1022, 1033 (N.D. Cal. 2019).

Tile's and Amazon's collusion to broadcast locations via the Sidewalk Network) and then turned into usable and understandable information which Tile then provides to stalkers in a host of formats, including the emails that it sends to would-be stalkers. Whether that information is encrypted or not has no bearing on whether Apple is responsible for (1) collecting, and (2) delivering that information. By Tile's logic, the Post Office does not deliver mail if envelopes are sealed, nor does AT&T facilitate calls if it does not listen in. But Tile's conduct is even more egregious. Consider the emails that Tile sent to Plaintiffs' stalker, with precise coordinates of the tracker's location, an *arial photograph of Plaintiffs' home,* a message stating "You're your [*sic*] Tiled item was just found at the location below. Time to get it!" and even a button that the stalker could click in order to get directions to Plaintiffs' home. *See, e.g.*, FAC ¶108, Figs. 15-19. Moreover, Tile cannot say that it lacked knowledge of what it was doing—the stalker's Tile "pinged" in the Houston Police Department's property room, and the tracker was not handed over to the police until *after* Plaintiffs first called Tile and explained the situation. *Id.* ¶¶87-88, 102. Tile further argues that its conduct, which it describes as "designing and marketing a Bluetooth tracker" is not highly offensive, but this ignores the FAC's allegations of Tile having both direct and constructive knowledge of the tracker's propensity for misuse, and of having a *marketing strategy* for its product that "exhibited the Company's lack of respect for women and view of women as sexual objects" including advertising on pornography sites and other dubious outlets. FAC ¶¶ 34-40. Specifically, Tile designed and marketed *its* tracker—both explicitly and implicitly—as having a use case for hunting women. *Id.* ¶¶ 40-46. Finally, Tile claims that privacy in one's location is not "a legally protected interest." Mot. at 12. This ignores *Carpenter v. United States*, 138 S. Ct. 2206 (2018), which confirms that individuals have a reasonable expectation of privacy in their geolocation data.[15] **CIPA:** Tile avers that there are no allegations that Defendants "can tie the 'locations or movements' of Tiles to any discreet 'person'" thus dooming Plaintiffs' CIPA claim. Mot. at 13. This ignores that Tile (1) continued to transmit the location of the "SDG Jeep" tracker after it had specific knowledge that it was being used to stalk Plaintiffs and *marketed its product*

[15] Tile also assert that the precise geolocation data is not properly pled, but the FAC shows *longitudinal and latitudinal coordinates* sent to Plaintiffs' stalker. FAC Figs. 15-19.

*as being suitable to stalking individual women*. FAC ¶¶102, 40-46. Tile not only betrayed the locations of Plaintiffs and other victims, it knowingly encourages its customers to do so. Tile's cited-to authority is thus inapposite. **UCL:** Tile's extraterritoriality challenge to the Ireland-Gordys' UCL claims is meritless. The UCL reaches any unlawful business acts or practices committed in California. *Sullivan v. Oracle Corp.*, 254 P.3d 237 & n.10 (Cal. 2011). Because the Ireland-Gordys allege that the unlawful conduct—the design, marketing, and introduction into the market of the Tile tracker—occurred in California, this case does not involve extraterritorial application of the UCL. *Hughes v. Apple, Inc.*, 2024 U.S. Dist. LEXIS 209321, at *8 (N.D. Cal. Nov. 2024); *Ehret v. Uber Technologies, Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014). Tile is similarly wrong that Plaintiffs have failed to state predicate violations of law under their "unlawful" prong UCL claim for the reasons stated throughout this brief. Finally, Tile is misguided in stating that the "unfair" prong UCL claim fails because "[t]he Ireland Gordys fail to…identify a California public policy against Bluetooth trackers." Mot. at 15. At minimum, Plaintiffs specifically identify CIPA and the California Constitutional Right to Privacy, both of which are California laws that were enacted to prevent others from violating an individual's right to privacy and freedom from unauthorized surveillance. FAC ¶224. Further, the FAC is replete with allegations of "significant harms stemming from the design of the [Tile trackers]," which dispatches Tile's argument. *Hughes*, 2024 U.S. Dist. LEXIS 209321, at *12.

### D. Defendant Life360 is a proper defendant.

As discussed above, and in further detail in Plaintiffs' opposition to Amazon's motion to dismiss, Plaintiffs' injuries are ongoing, and thus Life360 is a proper defendant.

## III. CONCLUSION

Tile's Motion should be denied. Alternatively, leave to amend is requested.

Dated: March 14, 2025

**WADE KILPELA SLADE LLP**

/s/ GWade

Gillian L. Wade
Sara D. Avila
Marc A. Castaneda

2450 Colorado Ave., Suite 100E,
Santa Monica, CA 90404
Telephone: (310) 667-7273
Facsimile: (424) 276-0473
gwade@waykayslay.com
sara@waykayslay.com
marc@waykayslay.com

David Slade (*pro hac vice*)
Lucy L. Holifield (*pro hac vice*)
1 Riverfront Place, Suite 745,
North Little Rock, AR 72114
slade@waykayslay.com
Tel: (501) 417-6445

**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**
Mark A. Milstein
mmilstein@mjfwlaw.com
2450 Colorado Ave., Ste. 100E
Santa Monica, California 90404
Tel: (310) 396-9600
Fax: (310) 396-9635

**wh LAW**
Brandon Haubert
brandon@wh.law
Jessica Hall
jessica@wh.law
1 Riverfront Place, Suite 745
North Little Rock, AR 72114
Telephone: 501.891.6000
Facsimile: 501.222.3027

*Attorneys for Plaintiffs individually and on behalf of all others similarly situated*