**WADE KILPELA SLADE LLP**
Gillian L. Wade, State Bar No. 229124
gwade@waykayslay.com
Sara D. Avila, State Bar No. 263213
sara@waykayslay.com
Marc A. Castaneda, State Bar No. 299001
marc@waykayslay.com
2450 Colorado Ave., Suite 100E,
Santa Monica, CA 90404
Telephone: (310) 667-7273
Facsimile: (424) 276-0473

**WADE KILPELA SLADE LLP**
David Slade
slade@ waykayslay.com (admitted *pro hac vice*)
Lucy L. Holifield (admitted *pro hac vice*)
lholifield@waykayslay.com
1 Riverfront Place, Suite 745,
North Little Rock, AR 72114
Telephone: (501) 417-6445
Facsimile: (424) 276-0473

*Attorneys for Plaintiffs and the proposed class*
*(Additional counsel listed on signature page)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHANNON IRELAND-GORDY and STEPHANIE IRELAND GORDY, MELISSA BROAD, and JANE DOE individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TILE, INC., LIFE360, INC., and AMAZON.COM, INC.,<br><br>Defendants. | Case No. 3:23-CV-04119-RFL<br><br>**PLAINTIFFS' OPPOSITION TO AMAZON.COM, INC.'S MOTION TO DISMISS**<br><br>Judge: Rita F. Lin<br>Dept.: 15<br>Date: April 29, 2025<br>Time: 10:00 a.m.<br><br>Date Action Filed: August 14, 2023<br>Trial Date: TBD |

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................ 1

II. FACTS ........................................................................ 3

A. Plaintiffs Stephanie Ireland-Gordy and Shannon Ireland Gordy ............................ 3

B. Plaintiff Melissa Broad ........................................................................ 5

C. Plaintiff Jane Doe ........................................................................ 6

III. ARGUMENT ........................................................................ 6

A. California law applies to Plaintiffs' claims ........................................................ 6

B. All Plaintiffs have standing to sue Amazon ........................................................ 8

i. The Ireland-Gordy Plaintiffs have standing to sue Amazon .......................... 8

ii. Plaintiffs Broad and Doe have standing to sue Amazon .............................. 11

C. Plaintiffs adequately state causes of action against Amazon ................................ 12

i. Plaintiffs adequately plead proximate cause ............................................. 12

ii. Plaintiffs adequately plead that Sidewalk Network is a Product ................. 14

IV. CONCLUSION ........................................................................ 15

## TABLE OF AUTHORITIES

*Audenhove v. Cty. of Riverside*
2016 U.S. Dist. LEXIS 130782 (C.D. Cal. Sep. 2016)....................10

*Canyon Cty. v. Syngenta Seeds, Inc.*
519 F.3d 969 (9th Cir. 2008)....................11

*Clapper v. Amnesty Int'l USA*
568 U.S. 398 (2013)....................8

*Cory v. Sutton*
2017 U.S. Dist. LEXIS 202033 (C.D. Cal. Aug. 2017)....................10

*Huang v. The Bicycle Casino, Inc.*
4 Cal. App. 5th 329 (2016)....................12, 13, 14

*Hughes v. Apple, Inc.*
723 F. Supp. 3d 693 (N.D. Cal. 2024)....................13, 14

*Khan v. 7-Eleven, Inc.*
2014 U.S. Dist. LEXIS 194828 (C.D. Cal. Nov. 2014)....................10

*Malta-Espinoza v. Gonzales*
478 F.3d 1080 (9th Cir. 2007)....................9

*Opperman v. Path, Inc.*
87 F. Supp. 3d 1018, 1040 (N.D. Cal. 2014)....................6

*Orellana v. Barr*
967 F.3d 927 (9th Cir. 2020)....................9

*Perez v. VAS S.p.A.*
188 Cal. App. 4th 658 (2010)....................12

*Rowe v. Univ. of S. Cal.*
2024 U.S. Dist. LEXIS 233456 (C.D. Cal. Dec. 2024)....................11

*San Diego Cty. Credit Union v. Citizens Equity First Credit Union*
60 F.4th 481 (9th Cir. 2023)....................8

*Soule v. General Motors Corp.*
8 Cal.4th 548 (1994)....................12

*Staats v. Vintner's Golf Club, LLC*
25 Cal. App. 5th 826 (2018)....................13

*State Dept. of State Hospitals v. Superior Court*
61 Cal. 4th 339 (2015)....................13

*Susan B. Anthony List v. Driehaus*
573 U.S. 149 (2014) ....................................................................................................8

*Weissich v. County of Marin*
224 Cal. App. 3d 1069 (1990)......................................................................................12

*Zinser v. Accufix Research Inst., Inc.*
253 F.3d 1180 (9th Cir. 2001) .....................................................................................7, 8

**STATUTES**

Cal. Pen. Code § 637.7(a) ..........................................................................................2, 15

Cal. Penal Code § 646.9(f)...........................................................................................9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This action is brought by four women who each were stalked with a Tile—a Bluetooth tracker that is a small, plastic square that can easily be affixed to virtually anything, undetected, and transmit its location back to its owner. Tile trackers are manufactured and marketed by Defendants Tile, Inc. and Life360, Inc. ("Tile") and have been available to the public for over a decade. In that time they actively—and unconscionably—were marketed as tools that abusers can use to stalk human beings.

The trackers work by emitting Bluetooth Low Energy ("BTE") frequencies, which it sends out in hopes that a receiving device may pick up and interpret the signal and use that data to transmit the location of the Tile back to its owner. For roughly the first decade of the product's existence, a Tile's signal only could be received and transmitted by nearby phones or other smart devices that had a Tile App loaded onto them, meaning that if the tracker was reported as lost and came within range of any smartphone with a Tile App, that nearby user's App would send the Tracker's owner an update of the tracker's location. Accordingly, the efficacy and reach of Tiles was limited by whether or not the tracker was close to one or more phones which had a Tile App installed. Put another way: a tracker's efficacy was limited by how many people had independently downloaded Tile's app.

But in 2021, Tile solved its problem as to efficacy and reach by partnering with Defendant Amazon.com, Inc. ("Amazon") in 2021. From that point on, Tile trackers' signals would be received and transmitted by a host of Amazon devices—including its Echo, Ring, and Sidewalk Bridge products—which Amazon has configured to emit their own "Sidewalk" network. The Sidewalk network is formed by each of the aforementioned Amazon products aggregating the home WiFi signals from their owners' homes. By linking the WiFi signal from an Echo product in Home A to a Ring product Home B to a Sidewalk Bridge in Home C, etc., Amazon is able to create a larger network that receives and transmits signals seamlessly wherever enough Amazon products are located. And, because of the ubiquity of these Amazon products, the Sidewalk network covers roughly 90% of the United States. Thus, the partnership among the Defendants meant that Tile trackers now could send their signal and expect it to be received and transmitted back to their

owners in at least 90% of the U.S. Accordingly, since the beginning of the partnership among the various Defendants, Amazon has become the primary manufacturer of the devices that determine the location of the Tile trackers.

Amazon moves to dismiss (ECF 78, the "Motion") the claims of each of the Plaintiffs, but devotes the brunt of its Motion toward Plaintiffs Stephanie and Shannon Ireland Gordy. As set forth in more detail below, each of the Motion's arguments fails.

First, each Plaintiff has standing to bring her claims against Amazon. Plaintiff Doe unquestionably pleads an injury that is traceable to Amazon's conduct: she was stalked by a Tile tracker in California in March of last year, long after Amazon started using its Sidewalk network to identify the location of Tile trackers. As to the other three Plaintiffs, they have pled ongoing injury and continued risk of stalking, meaning that Amazon's use of its Sidewalk network to determine the location of Tile trackers in present day still constitutes a significant enough risk of ongoing injury as to confer standing.

Second, Plaintiffs adequately allege proximate cause for their claims. Amazon's argues that the causal chain is broken by the intervening acts of third parties (*i.e.*, the stalkers), but as explained below, that does not alter the legal analysis when the third party's malicious acts are foreseeable. In this instance, it is entirely foreseeable that the Tile tracker could and would be used to stalk people.

Third, Amazon argues that its Sidewalk network is not a "product," but rather a "service," but this cannot be squared with the fact that Sidewalk only exists as a feature of the millions of physical products—Echos, Rings, and Sidewalk Bridges, at minimum—that it has sold to consumers and which reside in homes and businesses across the U.S.

Fourth, Amazon claims that the Sidewalk network is not an "electronic tracking device" under California's Invasion of Privacy Act ("CIPA"), which prohibits the use of "an electronic tracking device to determine the location or movement of a person." Cal. Pen. Code § 637.7(a). But this ignores the plain language of the statute as well as the FAC's well-pled facts. The Sidewalk network indisputably uses an "electronic tracking device" to determine people's location: it is configured to search for, receive, and transmit signals from Tile trackers for the *exclusive* purpose

of determining their location. Nothing in CIPA requires that Amazon *manufacture* the electronic tracking device that it uses; it merely requires that the violator *use* the device. It cannot be contested based upon the FAC's allegations that Amazon uses Tile trackers to determine Plaintiffs' and class members' locations.

Accordingly, as detailed below, Plaintiffs' claims should not be dismissed. Alternatively, if the Court finds any pleading deficiencies, Plaintiffs respectfully request leave to amend.

## II. FACTS

A Tile tracker is a square device small enough to be easily and covertly planted almost anywhere, including, for example, within the frame of a vehicle or the lining of a purse or suitcase. FAC ¶27. These devices were creating well deserved concern in the media as early as 2013 due to their suitability for use by stalkers to find their victims. *Id.* ¶¶33-46. In 2013, Tile represented to journalists that "a Tile…cannot provide continuous automatic location updates"; "is not a good solution for real-time tracking of moving objects"; and "will not support long-distance tracking of moving items." *Id.* ¶¶35-37. But these representations were rendered false no later than 2021, when Tile teamed up with Amazon to use Amazon's Sidewalk network products (*e.g.*, Bridge, Echo, and Ring) to expand the reach and efficacy of the trackers, resulting in a network or coverage that now reaches 90% of the U.S. population. *Id.* ¶¶65-66. Even today, Tile represents that "the Tile Network is safe"[1]; "safety and security are our top priority"; and Tile trackers are "not for tracking people."[2] Although the consumer-facing representations have changed somewhat over time, Tile continues to conceal and minimize the role its trackers play in illegal human tracking.

But Tile trackers—and the Sidewalk network on which they rely to transmit their location—have been and remain profoundly dangerous and have proven to be a coveted tool of relentless and dangerous stalkers. This is evident from, *inter alia*, the experiences of each of the Plaintiffs in this action.

//

//

[1] https://support.thetileapp.com/hc/en-us/articles/204315768-Tile-Network

[2] https://support.thetileapp.com/hc/en-us/articles/4563823537431-Tile-Scan-and-Secure-Overview

### A. Plaintiffs Stephanie Ireland-Gordy and Shannon Ireland Gordy

On or about October 31, 2016, Shannon Ireland-Gordy's stalker activated at least three Tile trackers and planted at least one named "SDG Jeep" in Plaintiffs' Jeep where it proceeded to transmit over 16,000 "pings" communicating Plaintiffs' precise location to Tile's servers until it was discovered and removed on March 10, 2017. *Id.* ¶¶78-79, 86, 108-11, 117; Declaration of Stephanie Ireland-Gordy (Ex. 1) ¶¶3, 5. Tile, in turn, transmitted that information to the stalker contemporaneous to their movements. FAC ¶6. After discovering "SDG Jeep," Plaintiffs contacted Tile that same day to confirm who planted the tracker, at which time Tile confirmed that the user account associated with "SDG Jeep" belonged to their stalker. *Id.* ¶86-87.

The Ireland-Gordys immediately called Houston police to report their findings, but the stalking continued, and Plaintiffs opted to press charges. *Id.* ¶¶88-95. After informal, cooperative efforts failed, Houston police sent a subpoena or warrant to Tile in 2017 seeking (i) user identification and (ii) historical geolocation information associated with the stalker's Tile account, which was needed to know whether Plaintiffs' stalker was using a Tile to locate them, and if so, to what degree. *Id.* ¶¶97-99. Tile began engaging the police regarding this first subpoena or warrant no later than October 12, 2017. *Id.* ¶103. Tile first misrepresented to the police that it could not identify the user associated with SDG Jeep; after the police called that bluff, Tile represented it would not cooperate with an out-of-state subpoena, so the police in San Mateo, California issued a follow-up subpoena or warrant from within California. *Id.* ¶¶99-103, 113. By November 2018, Tile had produced very limited information regarding the stalker's identity and the names and activation dates of the trackers associated with the stalker's account but still had not produced the historical geolocation information, claiming it had no such responsive information. *Id.* ¶¶100-02. Tile's representation in this regard was tantamount to representing that the Ireland-Gordy's stalker had not used a Tile to locate them, effectively concealing Tile's role in the stalking and Plaintiffs' causes of action as to Tile. As a result, the charges for illegal installation of a tracking device were dismissed for lack of evidence in May 2019. *Id.* ¶¶105-06.

Soon after realizing that Tile would not supply the missing links needed to show that the stalker had used a Tile to locate Plaintiffs, the stalker filed a civil suit against Stephanie in June

2019 for defamation (the "Civil Suit") in which additional subpoenas were issued to Tile. *Id.* ¶¶107, 113; Ex. 1 ¶4. Despite constant effort to discover the information needed to show that their stalker had actually used a Tile to find them, the Ireland-Gordys were not able to discover same until approximately April 27, 2020, when *non-party discovery* served upon their stalker's employer revealed several emails from "found@thetileapp.com" transmitting Plaintiffs' precise locations to their stalker (the "Tile Emails"). *Id.* ¶108; Ex. 1 ¶6. To date, Tile has never provided that information to Plaintiffs or police. *Id.* ¶109. Worse, Tile informed Plaintiffs on July 29, 2021 that, despite the numerous subpoenas and warrants served, it did not take steps to preserve the data associated with their stalker's Tile account. *Id.* ¶113. The Civil Suit (and the resulting legal fees) dragged on until June 2021 (*id.* ¶115) and as of May 12, 2021, Tile continued to represent to Plaintiffs that no location history or devices are associated with their stalker's Tile account. Ex. 1 ¶7.

The Ireland-Gordys remain unsure of whether their stalker continues to track them via Tile(s), and two of the Tiles activated by their stalker contemporaneous to "SDG Jeep" remain unaccounted for. FAC ¶¶117-18; Ex. 1 ¶4. And Tile has only made it easier for stalkers to locate people since partnering with Amazon in 2021 to amplify the reach and ability of Tiles through Amazon's Sidewalk network and associated devices and since implementing its purported "Anti-Theft" features in 2023, which make it difficult, if not impossible, for a person to find a hidden Tile that is travelling with them. FAC ¶¶31, 60, 64-68. Even though Plaintiffs have moved three times to evade their stalker (FAC ¶¶80, 94, 116), they remain in constant fear of being found. Indeed, the lock on the private gate of their current home was broken just months ago—a development that is unsettlingly similar to their stalker's prior conduct Ex. 1 ¶¶8-9. Despite pleading with Tile over the years to confirm whether any other of the Tiles associated with their stalker's account were travelling with them and whether Tile deactivated their stalker's account, it has not. Ex. 1 ¶3.

**B. Plaintiff Melissa Broad**

Plaintiff Broad was stalked by an abusive boyfriend, via a Tile tracker, from 2021 to 2023, if not longer. FAC 32 ¶¶119-133. With the help of her family, she finally discovered and removed

two trackers hidden in her vehicle in March 2023. *Id.* ¶ 130. Plaintiff Broad's father, desperate to help his daughter evade her tormentor, devised an elaborate plan in which he drove around with the recently discovered Tile trackers while she effected her escape through a shopping mall. *Id.* ¶¶ 131-32. Plaintiff Broad then moved in with her family and laid low. While she achieved some degree of escape from her stalker, her nightmare is far from over. Her stalker continues to call and harass her using blocked or unknown phone numbers. ECF 38-1 ¶7. She continues to suffer from extreme and pervasive fear, anxiety, and depression from being tracked and reasonably so—to this day, she cannot be sure she isn't being tracked by a Tile. FAC 32 ¶133; ECF 38-1 ¶7.

### C. Plaintiff Jane Doe

Plaintiff Doe, a California resident, was stalked by an ex-boyfriend, via a Tile tracker. in March 2024. FAC ¶134. She first suspected that the man was tracking her whereabouts when she discovered him following her to an undisclosed location in his car. *Id.* ¶135. Plaintiff Doe knew that her ex was likely to use Tile trackers, and began researching how to discover and disable them, including through Internet searches, downloading apps, and even calling both Tile and the police. *Id*. ¶¶136-151. Ultimately, however, no one was able to help Plaintiff Doe, and she was forced to remove the entire back seat of her car before she finally found the tracker hidden in the vehicle's frame. *Id*. ¶152. Like the Ireland Gordys and Broad, Plaintiff Doe remains constantly fearful and anxious that she is still being tracked. *Id.* ¶156.

## III. ARGUMENT

### A. California law applies to Plaintiffs' claims.

Though Plaintiffs assert their claims under California law, Amazon's proximate causation and product liability arguments rely exclusively on Texas law. As a threshold matter, there can be no doubt that California law applies for the claims of Plaintiff Doe, a California resident, and thus Amazon's arguments are facially inapposite. Turning to the other Plaintiffs' claims, "[w]hether a nonresident plaintiff can assert a claim under California law is a constitutional question based on whether California has sufficiently significant contacts with the plaintiff's claims." *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1040 (N.D. Cal. 2014). The significant contacts test is met here. Application of California law is constitutional where a defendant has manufactured and sold a

significant number of the products at issue in the given forum and further conducted significant additional business in that forum. FAC ¶25(c) ("A significant number of the Echo devices sold by Defendant Amazon—which make up the "network" over which Tile Tracker signals are transmitted—are purchased and used in California, and the Amazon data centers that process the data from these devices are located in California"); *id.* ¶25(d) ("At all times relevant to this litigation, each of the three Defendants [including Amazon] has conducted a significant portion of its business in California"). Indeed, while Amazon is headquartered in Washington, seven of its thirty-seven corporate campuses in North America are in California: Santa Clara, Irvine, Palo Alto, San Diego, Sunnyvale, Cupertino, and San Francisco.[3] Moreover, many of its corporate positions relating to the Sidewalk network are for California locations. Each of the following job openings, for example, are in California and explicitly mention Sidewalk:

- "Principal Program Manager, Amazon Sidewalk" – Hawthorne, CA – "We are seeking an entrepreneurial Program Manager in owning a variety of initiatives to further expand Sidewalk network connectivity and collect data from the field. This involves the management of internal partnerships and third-party vendors….You will play a key role in helping us achieve Sidewalk goals and roadmaps. Additionally, this individual will work cross-functionally to ensure engineering and product teams have the necessary data to make key-decisions on network design and performance."[4]

- "Security Engineer Insider Threat, Devices Subsidiaries & Acquisitions Security" – Sunnyvale, CA and Los Angeles, CA – "This individual will work closely with multiple teams across Amazon Key, Blink, Ring, Sidewalk & eero."[5]

- "Head of Content Design, Ring/Blink/Amazon Key" – Santa Monica, CA, San Francisco, CA, and Hawthorne, CA – "About the team…Ring Blink Key Sidewalk (RBKS) Design is a collaborative, multi-disciplinary organization of designers, engineers, writers, researchers, product managers, and program managers working together to bring the RBKS product vision to life."[6]

In a footnote, Amazon purports to incorporate by reference Tile's choice-of-law arguments in favor of Texas law from Tile's concurrently-filed motion to dismiss,[7] while also noting its

---

[3] https://www.amazon.jobs/content/en/locations
[4] https://www.amazon.jobs/en/jobs/2908984/principal-program-manager-amazon-sidewalk
[5] https://amazon.jobs/en/jobs/2925571/security-engineer-insider-threat-devices-subsidiaries-acquisitions-security
[6] https://amazon.jobs/en/jobs/2894569/head-of-content-design-ring-blink-amazon-key
[7] As the proponent of foreign law, Amazon has the burden to show that Texas law, and not California law, applies. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001).

substantive claim-specific arguments "apply with equal force under either California or Texas law." Mot. at fn. 7.

But this attempts to marry two incongruent positions. Texas law could not come out on top in California's governmental interest analysis, as Tile's motion argues (ECF 77 at 6-9), unless it shows material differences between California and Texas law. *Zinser*, 253 F.3d at 1187. If Amazon's substantive arguments "apply with equal force" under either state's law, there are no material differences. As a result, Amazon fails to meet its burden in the first step of the governmental interest analysis and there is no need to proceed. For this reason and for the reasons set forth in Plaintiffs' concurrently-filed opposition to Tile's motion to dismiss, which Plaintiffs incorporate by reference herein, California law applies.

**B. All Plaintiffs have standing to sue Amazon.**

**i. The Ireland-Gordy Plaintiffs have standing to sue Amazon.**

Amazon challenges Plaintiffs' standing, couching its argument as one of "causation." Mot. at 6. Specifically, it avers that each of Plaintiff's claims of harm due to ongoing threat of stalking are "entirely too speculative," and only "merely possible." *Id.* The fact that each of the women were stalked once before, Amazon reasons, does not translate into being at higher risk of being stalked by their abuser in the future. *Id*. This is flatly wrong under controlling Supreme Court and Ninth Circuit jurisprudence.

The holding from the seminal Supreme Court case on standing and risk of future injury, *Clapper v. Amnesty Int'l USA*, does not require plaintiffs, for purposes of establishing standing, "to demonstrate that it is literally certain that the harms they identify will come about." 568 U.S. 398, 412 n.5 (2013). Rather, as the Ninth Circuit has explained "*Clapper* recognized that standing may exist when there is a "'substantial risk' that the harm will occur[.]" *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 60 F.4th 481, 493 (9th Cir. 2023). Subsequent Supreme Court jurisprudence confirms this. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)("allegation of future injury may suffice if the threatened injury is certainly

---

Amazon makes no attempt to meet that burden. To the extent the Court deems it appropriate for Amazon to incorporate by reference Tile's choice-of-law arguments, Plaintiffs do the same with respect to their arguments in opposition.

impending, *or there is a substantial risk that the harm will occur*") (emphasis added) (cleaned up). The Ninth Circuit has articulated a parallel standard, stating that it has "long held that a threatened injury may constitute an injury in fact where there is 'a credible threat of harm' in the future." *Citizens Equity*, 60 F.4th at 493.

To argue there is not a "substantial risk" or "credible threat" of Plaintiffs' being stalked in the future—by a Tile tracker that harnesses the Sidewalk Network—ignores the very nature of the crime at issue: "Stalking is a…personal crime. The stalker often seeks a sense of power or control over his victim, usually through fear.…And, because ***stalking, by definition, requires repeated victimization***, it is intuitive that there is an increased opportunity for violence." *Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1086-87 (9th Cir. 2007) (Duffy, J. dissent) (emphasised); *Orellana v. Barr*, 967 F.3d 927, 935 (9th Cir. 2020) ("[t]he threat of violence, real or perceived, is almost always present in [stalking] cases; tragically, it is far from unheard of for a pattern of stalking to end in the stalker killing the stalked.").

Stalking is *so* synonymous with serial, ongoing injury that it is an essential element of the crime to demonstrate a "course of conduct" on the part of the defendant, meaning "two or more acts occurring over a period of time, however short, evidencing a continuity of purpose." Cal. Penal Code § 646.9(f). And such course of conduct must establish a "credible threat," meaning one that is "made with the intent to place the person that is the target of the threat in reasonable fear for their safety…and made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for their safety[.]" *Id*. at § 646.9(g). These definitions, or comparable ones, are found in virtually every other state's stalking statutes, which all were enacted following California.[8] *See* Note, Robert N. Miller, *"Stalk Talk": A First Look at Anti-Stalking Legislation*, 50 WASH. & LEE L. REV. 1303, 1303 & n.7 (1993) (explaining that 48 states, including Michigan, enacted criminal antistalking statutes in the wake of California's statute).

---

[8] "California's stalking laws are rooted in the case of a man who became obsessed with a young actress living hundreds of miles away. He sent her items through the mail until one day he traveled to her home, shot and killed her on her front step." *Malta-Espinoza*, 478 F.3d at 1088.

It flies in the face of what we know about stalking and stalkers to suggest that Plaintiffs would not or could not once more be victimized. Certainly, for the purposes of a pleadings challenge, Plaintiffs have plausibly alleged an ongoing risk of harm. For example, the Ireland-Gordy Plaintiffs extensively lay out an ongoing campaign of harassment by their stalker, involving being tracked by a Tile for months or years (FAC ¶¶79, 86, 108); receiving an email stating "I feel you are no longer walking this earth" (*id.* ¶81); purchasing a bullet proof vest because the stalker carried a gun in her car (*id.* ¶82); finding their cars vandalized (*id.* ¶¶83-84); being chased by the stalker in traffic (*id.* ¶ 91); enlisting police to call the stalker and insist that she leave Plaintiffs alone (*id.* ¶ 90); moving residences three times (*id.* ¶¶ 80, 94, 116); and, when Tile failed to respond to legal process, which resulted in criminal charges being dropped for lack of evidence, being sued civilly by their stalker (*id.* ¶ 107). Further, two of the trackers activated by their stalker at the same time as "SDG Jeep" remain unaccounted for. *Id.* ¶117; Ex. 1 ¶3. These trackers could have been in the Ireland-Gordys' effects when they most recently moved in hopes of evading their stalker, which in turn may have betrayed their current home address. *Id.*

And the threat of continued stalking for all Plaintiffs is compounded by the actions of Defendants. Specific to the instant Motion, Amazon exponentially increased the reach and efficacy of the trackers by incorporating them into its Sidewalk Network. *Id.* ¶¶ 64-68. It is not implausible to allege that increased efficacy and reach creates a heightened risk that Plaintiffs' stalkers have or will become emboldened to resume a campaign of terror against the Ireland-Gordys.

Courts have found a "credible threat" of stalking established by a "pattern of conduct" with far fewer data points. *Khan v. 7-Eleven, Inc.*, 2014 U.S. Dist. LEXIS 194828, at *12-13 (C.D. Cal. Nov. 2014) ("credible threat" when complaint alleged defendant drove a vehicle menacingly toward the plaintiff, and that the defendant had driven the same vehicle multiple times before); *Audenhove v. Cty. of Riverside*, 2016 U.S. Dist. LEXIS 130782, at *13-15 (C.D. Cal. Sep. 2016) (when defendant "repeatedly followed or harassed [a family]," there was sufficient probable cause to arrest the man for felony stalking.); *Cory v. Sutton*, 2017 U.S. Dist. LEXIS 202033, at *8-9 (C.D. Cal. Aug. 2017) (finding that "incessant messaging and physical pursuit of the victim could

reasonably have constituted a threat to the victim" and that "sufficient evidence established [the] threats and the victim's real and reasonable fear[.]").

Given the fact-specific nature of the inquiry at hand—coupled with the fact that most of a stalker's activity has historically been shielded from view until discovery in litigation, it is premature, at minimum, to conclude that there is no ongoing threat of harm at the pleadings stage. As noted above, the FAC is replete with concrete allegations that, construed in the light most favorable to Plaintiffs, make the allegations of ongoing harm plausible. Should Amazon (or Tile) wish to raise this issue on a full record, it may, but the Court should not dismiss Plaintiffs' claims on the basis of the concreteness of their allegations of continued harm now, on an incomplete record.

**ii. Plaintiffs Broad and Doe have standing to sue Amazon.**

The risk of ongoing injury applies equally to Broad and Doe. As for Broad, Amazon further argues that it could not have caused her injury because she lives in Canada and, per Amazon's declarant, the Sidewalk network does not operate in Canada. But the causation required for Article III is a less rigorous standard than that of proximate cause. *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 974 n.7 (9th Cir. 2008). Allegations of a *plausible* line of causation are sufficient. *Rowe v. Univ. of S. Cal.*, 2024 U.S. Dist. LEXIS 233456, at *14 (C.D. Cal. Dec. 2024). Broad meets that standard here.

Plaintiffs' description of the Sidewalk network and how it works—tapping into Bluetooth networks created by Amazon products located in consumers' homes and reaching 90% of the U.S. population (FAC ¶¶64-65)—shows a plausible line of causation between Amazon's Sidewalk network and the injuries of a plaintiff who resides roughly 120 miles from the U.S. border, even when the statement of Amazon's declarant is taken into account. This is particularly true given that, "in the absence of a full-fledged evidentiary hearing, disputes in the facts pertinent to subject matter jurisdiction are viewed in the light most favorable to the opposing party." *Rowe*, 2024 U.S. Dist. LEXIS 233456, at *11. Moreover, Amazon's argument is premised on the notion that Plaintiff Broad will never set foot in the United States, which simply is not plausible.

Amazon's argument regarding Doe is unclear. It appears to cite Doe's allegations, but attributes them to Broad. Mot. at 13 ("Similarly, Ms. Broad fails to allege that the Sidewalk Network was involved in her stalking, or that it contributed to in any way to her alleged injuries. Dkt. 32 ¶¶ 134-156."). But this is an untenable position in light of the FAC's allegations that "Doe is a citizen of California" who was stalked in March 2024 (FAC ¶¶16, 134-156), which was after Amazon and Tile entered their partnership that "reaches 90% of the United States population." *Id.* ¶¶64-66. Amazon does not aver—nor can it, at this stage—that this 90% coverage does not include California, rendering its argument is meritless.

**C. Plaintiffs adequately state causes of action against Amazon.**

**i. Plaintiffs adequately plead proximate cause.**

The fact that third parties use Tile trackers to stalk Plaintiffs and class members does not cut off the chain of causation, given that this use of the Tile was not only foreseeable, but actively encouraged in various marketing campaigns for the product, and of course, reports of trackers being used to stalk women have long been present in the public record. FAC ¶¶40-49. "[A] third party's conduct is a superseding force cutting off the defendant's liability only if it was unforeseeable and the injury it caused was unforeseeable." *Huang v. The Bicycle Casino, Inc.* (2016) 4 Cal. App. 5th 329, 348; *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 573 n.9 ( "the defense of 'superseding cause'…absolves a tortfeasor, even though his conduct was a substantial contributing factor, when an independent event intervenes in the chain of causation, producing harm of a kind and degree so far beyond the risk the original tortfeasor should have foreseen that the law deems it unfair to hold him responsible"); *Perez v. VAS S.p.A.* (2010) 188 Cal. App. 4th 658, 685 ("product misuse may serve as a complete defense when the misuse was so unforeseeable that it should be deemed the sole or superseding cause") (internal quotes omitted).

"Ordinarily, proximate cause is a question of fact which cannot be decided as a matter of law from the allegations of a complaint." *Weissich v. County of Marin* (1990) 224 Cal. App. 3d 1069, 1084. It is only "where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact." *Id.* In California as elsewhere, causation is a

two-part inquiry, first focusing on "causation in fact," and then engaging in an analysis of public policy considerations. *State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal. 4th 339, 352.

The first part, "causation in fact," is easily satisfied here. Amazon has created the Sidewalk network that is now—and has been—instrumental in the way Tile trackers transmit their locations to their owners. At the very least, a jury could reasonably conclude that Amazon's decision to increase the reach and efficacy of trackers by grafting them onto its Sidewalk network constituted a material cause of the harms that were and are experienced by Plaintiffs.

The second part of the inquiry focuses on public policy and fairness, with particular attention to whether the harm was foreseeable to the defendant. *Staats v. Vintner's Golf Club, LLC* (2018) 25 Cal. App. 5th 826, 837 ("foreseeability may be relevant to the jury's determination of whether the defendant's negligence was a proximate or legal cause of the plaintiff's injury"). It is not hard to foresee that the Tile tracker would materially facilitate stalking. Indeed, by the time Amazon agreed to partner with Tile to increase the efficacy and reach of trackers, their propensity for stalking was well-documented. FAC ¶¶33-49. The fact that the Tile tracker and the Sidewalk Network have other uses that are consistent with public policy, such as finding one's car in a parking lot, should not absolve Amazon (or Tile) for harmful uses contrary to it, especially when those uses are foreseeable (and were actually foreseen).

Amazon argues that the conduct of stalkers supersedes (to the point of eliminating) its own responsibility. Mot. at 9. But "a third party's conduct is a superseding force cutting off the defendant's liability only if it was unforeseeable and the injury it caused was unforeseeable under the circumstances of the case." *Huang*, 4 Cal. App. 5th at 348; *Hughes v. Apple, Inc*., 723 F. Supp. 3d 693, 706 (N.D. Cal. 2024) (Chhabria, J.)

California courts recognize that "[a] defendant's negligent conduct may combine with another factor to cause harm; if a defendant's negligence was a substantial factor in causing the plaintiff's harm, then the defendant is responsible for the harm; a defendant cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in

causing the plaintiff's harm; but conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." *Id*. at 348.[9]

Here, the very thing that makes the Tile tracker and the Sidewalk Network dangerous is the inevitable misuse by stalkers. After all, this case is about devices designed to facilitate tracking. The foreseeability is underscored by the reporting concerning the product's risks at the time of its launch and beyond. FAC ¶¶10, 31-49, 64-68. A reasonable jury could—and likely will—find *both* Defendants responsible on these facts. A finding to the contrary would have the perverse effect of rewarding defendants like Amazon and Tile for making products that are particularly attractive to criminals on the theory that their behavior absolves the company of responsibility for misuse. As Judge Chhabria explained in analogous litigation:

> Ultimately, "to the extent that [Amazon] can be understood to make the argument that it is unclear from these factual allegations to what extent [the Tile tracker, Sidewalk Network, and their defects] caused the specific harm suffered by one of the individual plaintiffs, [Amazon] raise[s] a factual argument that must be addressed at a later stage of the litigation." *Social Media Cases*, 2023 Cal. Super. LEXIS 76992, 2023 WL 6847378, at *30. That will be a significant question, and a heavily fact-bound one.

*Hughes*, 723 F. Supp. 3d at 709. Amazon's proximate causation argument fails.

**ii. Plaintiffs adequately plead that Sidewalk Network is a Product.**

Amazon avers that Plaintiffs' product liability and CIPA claims fail because its Sidewalk Network "is unambiguously a service, not a product." Mot. at 11. However, this conclusory statement is the entirety of its argument. In reality, the Sidewalk Network emanates—exclusively—from physical products that Amazon makes and sells, such as "Amazon's Echo, Ring, and Sidewalk Bridge products (among others, which are home electronic devices that can creates [*sic*] their own network by aggregating consumers' WiFi signals." FAC ¶64. The Sidewalk Network exists only because of these physical items, and any attempt to separate it from the physical items that Amazon has sold to consumers is an act of sophistry equivalent to Amazon claiming that it is not an online retailer, but rather a package delivery service. The Sidewalk

[9] In *Huang*, the court found there were genuine issues of material fact regarding causation in a personal injury suit brought by a passenger who allegedly was pushed and fell while boarding defendant's shuttle bus, despite the fact a third party was the immediate cause of the fall.

Network is a feature of physical hardware that Amazon manufactures (*id*. ¶¶64-66), and Amazon's arguments to the contrary are meritless.

Equally meritless is Amazon's CIPA-specific argument that the Sidewalk network is not an "electronic tracking device" within the meaning of Cal. Pen. Code § 637.7. Mot. at 11-12. It is not an element of the claim to prove that the defendant *manufactured* an "electronic tracking device"—instead, all that must be down is that the defendant "use[d] an electronic tracking device to determine the location or movement of a person." *Id*. § 637.7(a). Amazon concedes that "the Tile tracker could be considered a 'device.'" Mot. at 12. This is because, under CIPA, an "electronic tracking device" is "any device attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." Cal. Pen. Code § 637.7(d); *see, also,* FAC ¶ 79 (Tile hidden in the Ireland Gordy Plaintiffs' Jeep); *id.* ¶ 130 (Tile trackers hidden in Plaintiff Broad's car); *id*. ¶ 152 (Tile tracker hidden in Plaintiff Doe's car).

It is equally beyond dispute that the Sidewalk network *uses Tile trackers to determine the location of Plaintiffs and class members.* Amazon's own devices—the Echos, Rings, and Sidewalk Bridge products that create the Sidewalk Network—are designed to pick up the Tile's signals and transmit them back to the stalkers. And while these products that comprise the Sidewalk Network are essential to Tile's efficacy and reach, *the Tile tracker is equally essential for Amazon* to fulfill its obligations to the Tile Defendants. Per the FAC: "eligible Echo devices can use Amazon Sidewalk *to securely search for Tiles*….[T]hese Echo devices can also *securely scan for and update the location of Tiles* using Sidewalk's Bluetooth frequency. This expanded relationship *will exponentially grow the already massive Tile network, which means lost Tiles…will receive location updates more often, helping customers track them down faster.*" FAC ¶67 (emphasis added).

Plaintiffs have more than plausibly alleged a CIPA violation for purposes of withstanding a Rule 12 challenge. A further challenge may be undertaken on more robust record, of course, but at the pleadings stage, Amazon's argument must fail.

## IV. CONCLUSION

Amazon's Motion to Dismiss should be denied. Alternatively, Plaintiffs' respectfully request leave to file a Second Amended Complaint to cure any perceived deficiencies.

Dated: March 14, 2025

**WADE KILPELA SLADE LLP**

/s/ Gillian L. Wade
Gillian L. Wade
Sara D. Avila
Marc A. Castaneda
2450 Colorado Ave., Suite 100E,
Santa Monica, CA 90404
Telephone: (310) 667-7273
Facsimile: (424) 276-0473
gwade@waykayslay.com
sara@waykayslay.com
marc@waykayslay.com

David Slade (admitted *pro hac vice*)
Lucy L. Holifield (admitted *pro hac vice*)
1 Riverfront Place, Suite 745,
North Little Rock, AR 72114
slade@waykayslay.com
Tel: (501) 417-6445

**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**
Mark A. Milstein
mmilstein@mjfwlaw.com
2450 Colorado Ave., Ste. 100E
Santa Monica, California 90404
Tel: (310) 396-9600
Fax: (310) 396-9635

**wh LAW**
Brandon Haubert
brandon@wh.law
Jessica Hall
jessica@wh.law
1 Riverfront Place, Suite 745
North Little Rock, AR 72114
Telephone: 501.891.6000
Facsimile: 501.222.3027

*Attorneys for Plaintiffs individually and on behalf of all others similarly situated*