**WADE KILPELA SLADE LLP**
Gillian L. Wade, State Bar No. 229124
gwade@waykayslay.com
Sara D. Avila, State Bar No. 263213
sara@waykayslay.com
Marc A. Castaneda, State Bar No. 299001
marc@waykayslay.com
2450 Colorado Ave., Suite 100E,
Santa Monica, CA 90404
Telephone: (310) 667-7273
Facsimile: (424) 276-0473

**WADE KILPELA SLADE LLP**
David Slade
slade@ waykayslay.com (admitted *pro hac vice*)
Lucy L. Holifield (admitted *pro hac vice*)
lholifield@waykayslay.com
1 Riverfront Place, Suite 745,
North Little Rock, AR 72114
Telephone: (501) 417-6445
Facsimile: (424) 276-0473

*Attorneys for Plaintiffs and the proposed class*
*(Additional counsel listed on signature page)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

SHANNON IRELAND-GORDY and STEPHANIE IRELAND-GORDY, MELISSA BROAD, and JANE DOE individually and on behalf of all others similarly situated,

Plaintiffs,

v.

TILE, INC., LIFE360, INC., and AMAZON.COM, INC.,

Defendants.

Case No. 3:23-CV-04119-RFL

**STATEMENT OF RECENT DECISION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO AMAZON.COM, INC.'S MOTION TO DISMISS**

Judge: Rita F. Lin
Dept.: 15
Date: May 20, 2025
Time: 10:00 a.m.

Action Filed: Aug. 14, 2023
Trial Date: TBD

Pursuant to Civil Local Rule 7-3(d)(2), Plaintiffs Shannon Ireland-Gordy, Stephanie Ireland-Gordy, Melissa Broad, and Jane Doe (collectively, "Plaintiffs") respectfully submit this STATEMENT OF RECENT DECISION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO AMAZON.COM, INC.'S MOTION TO DISMISS, which brings to this Court's attention a relevant decision issued after submission in this case of Plaintiffs' Opposition (ECF 87) to Amazon.com, Inc.'s motion to dismiss (ECF 78).

In the decision noticed herein, *State of Nevada vs. TikTok, Inc.*, District Court, Clark County, Nevada, Case No. A-24-886127-B (April 25, 2025), attached hereto as Exhibit 1, the Honorable Judge Joanna S. Kishner denied TikTok, Inc.'s motion to dismiss the State of Nevada's product liability claims, providing analysis regarding the meaning of a "product." Relying in part on the "policy objectives" set forth in the Restatement (Second) of Torts § 402A, Judge Kishner determined that TikTok's social media platform is "not precluded from meeting the definition of 'product' for the purposes of strict products liability" and that "the Court need not adhere to a strict definition of 'product' that encompasses only 'tangible' items" but instead should leave room to consider "changes in technology" on a case-by-case basis.

Dated: April 30, 2025

**WADE KILPELA SLADE LLP**

/s/ GWade

Gillian L. Wade
Sara D. Avila
Marc A. Castaneda
2450 Colorado Ave., Suite 100E,
Santa Monica, CA 90404
Telephone: (310) 667-7273
Facsimile: (424) 276-0473
gwade@waykayslay.com
sara@waykayslay.com
marc@waykayslay.com

David Slade- (admitted *pro hac vice*)
Lucy L. Holifield (admitted *pro hac vice*)
1 Riverfront Place, Suite 745,
North Little Rock, AR 72114
slade@waykayslay.com

Tel: (501) 417-6445

**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**
Mark A. Milstein
mmilstein@mjfwlaw.com
2450 Colorado Ave., Ste. 100E
Santa Monica, California 90404
Tel: (310) 396-9600
Fax: (310) 396-9635

**wh LAW**
Brandon Haubert
brandon@wh.law
Jessica Hall
jessica@wh.law
1 Riverfront Place, Suite 745
North Little Rock, AR 72114
Telephone: 501.891.6000
Facsimile: 501.222.3027

*Attorneys for Plaintiffs individually and on behalf of all others similarly situated*

# EXHIBIT 1

ELECTRONICALLY SERVED
4/25/2025 3:39 PM

A-24-886127-B

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

**Other Business Court Matters** **COURT MINUTES** **April 25, 2025**

A-24-886127-B State of Nevada, Plaintiff(s)
vs.
TikTok, Inc., Defendant(s)

**April 25, 2025** **3:00 AM** **Minute Order**

**HEARD BY:** Kishner, Joanna S. **COURTROOM:** Chambers

**COURT CLERK:** Stephanie Rapel

**JOURNAL ENTRIES**

**INTRODUCTION**

On February 11, 2025, the above-titled matter came before Department XXXI regarding Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 108). Appearances were made on behalf of all parties, as reflected on the record. Having reviewed the papers and pleadings filed, having heard oral argument, and having deferred the matter to Chambers, the Court makes the following ruling:

**FACTUAL BACKGROUND**

On January 30, 2024, Plaintiff filed its initial Complaint (Doc. 1), which alleged, in sum, Nevada Deceptive Trade Practices Act ("NDTPA") claims (Counts I and II), product liability claims (Counts III and IV), negligence (Count V), and unjust enrichment (Count VI) against Defendants. Thereafter, Defendants moved to dismiss all claims, arguing lack of personal jurisdiction, immunity under the Communications Decency Act, 47 U.S.C. 230, First Amendment protection, lack of standing to assert products liability, negligence, or unjust enrichment claims, and that said claims otherwise fail as a matter of law.

On November 13, 2024, the Court entered an Amended Order (Doc. 99), granting in part and denying in part Defendants Motion to Dismiss the initial Complaint (Doc. 1). The Court then granted Plaintiff leave to amend in each case.

On November 15, 2024, Plaintiff filed its Second-Amended Complaint ("SAC") (Doc. 102 [redacted]; Doc. 103 [under seal]). Thereafter, Defendants filed their Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 108), which is the subject of this ruling.

**LEGAL STANDARD**

A complaint must be dismissed for failure to state a claim if the plaintiff fails to allege facts that, if taken as true, "would entitle it to relief." *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008); NRCP 12(b)(5). "All factual allegations of the complaint must be accepted as true," and courts "must construe the pleading liberally and draw every fair intendment in favor of the [nonmoving party]." *Vacation Village, Inc. v. Hitachi America, Ltd*., 110 Nev. 481, 484, 874 P.2d 744, 746 (1994).

**ARGUMENTS**

For purposes of brevity, the Court provides a brief summary of the parties' various arguments herein. In issuing this Order, however, the Court has fully considered every argument raised by the parties in their briefing and during oral argument.

***Parens Patriae* Standing:**

Defendants argue that Plaintiff cannot assert parens patriae standing on two bases: First, absent specific legislative authorization, the State may not bring parens patriae actions to recover money damages based on alleged personal injuries to third-party individuals. *State of Cal. v. Frito-Lay, Inc.*, 474 F.2d 774, 775 (9th Cir. 1973); *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1164 (N.D. Cal. 2007). This rule is consistent with prior case law, even where courts recognized that the State has certain common-law powers. *See, e.g., State ex rel. Fowler v. Moore*, 46 Nev. 65, 207 P. 75 (1922); *People v. Miner, 2 Lans*. 396 (N.Y. App. 1868); *Ryan v. Eighth Judicial District Court*, 88 Nev. 638, 503 P.2d 842 (1972). Second, *parens patriae* standing is unavailable when the allegedly affected individuals can obtain complete relief through private suit; *parens patriae* applies only in cases involving communitywide hazards affecting all state residents, such as pollution or viruses. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 652-53 (9th Cir. 2017). Private individuals in other jurisdictions are actively seeking relief on these exact issues. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig*., 702 F. Supp. 3d 809, 818 (N.D. Cal. 2023); *Soc. Media Cases*, 2023 WL 6847378, at *1 (Cal. Super. Ct. Oct. 13, 2023).

Plaintiff first articulates that the applicability of legal citations in the SAC has no relevance; rather, the Court must look at whether the SAC pleads a sufficient factual basis per *Buzz Stew* to bring a *parens patriae* claim. Plaintiff then argues that the key issue that defines *parens patriae* relates not to the recovery sought, but rather the interest advocated; specifically, *parens patriae* standing is invoked "to halt injury to a quasi-sovereign state interest." *Frito-Lay*, 474 F.2d at 775. Plaintiff argues that the U.S. Supreme Court case *Alfred L. Snapp & Son, Inc. v. Puerto Rico* and related precedents provide a basis

for *parens patriae* where Plaintiff can articulate a quasi-sovereign interest, separate from the specific interests of private Nevadans, to protect the health and safety of all Nevadans. 458 U.S. 592 (1982). Plaintiff argues that *Frito-Lay* and *Infineon*, in context, do not establish an express statutory authorization requirement. Moreover Harris only precludes *parens patriae* where the State is a nominal party seeking recovery on a discrete segment of its population. Plaintiff believes the SAC amendments adequately clarify the quasi-sovereign purpose of protecting of Nevadans, asserting the alleged harm as widespread and severe. In particular, Plaintiff highlights that minors - the primary affected group - are not well-positioned to bring suit independently, further justifying its intervention. Likewise, Plaintiff argues that its sovereign responsibility to protect the health and well-being of its residents, especially children, supports *parens patriae* standing. Plaintiff alleges that research indicates a link between the platform and harms such as compulsive use and self-image distortion, contributing to a broader public health crisis.

In its reply, Defendants argue that *Snapp* establishes *parens patriae* standing applies only when the States claim involves inchoate harms to the health and well-being of its residents in general, not where the claim rests on injury to an identifiable group of individual residents. *Snapp* 458 U.S. at 607. Further, Defendants argue that Plaintiff failed to address "common law powers" available to the State as addressed in Moore, Miner, and Ryan and reaffirm their interpretation of *Frito-Lay*, *Infineon*, and *Harris*, noting that Plaintiff neither denies that the allegedly injured individuals are capable of pursuing their own recoveries, nor cites any authority authorizing Plaintiff to assert common-law claims on their behalf.

Here, the Court finds that the SAC provides the requisite factual basis to establish *parens patriae* standing for the common law claims. *Snapp* sets forth that states have a quasi-sovereign interest in the health and well-being, both physical and economic, of its residents. Further, *Snapp* and cases like *Frito-Lay* and *Harris* underscore that states must articulate an interest apart from the interests of particular private parties in order to assert *parens patriae* standing. NRS 228.300 through 228.290, inclusive, provides, inter alia, statutory authority to Consumer's Advocate to represent a class of Nevada consumers in actions involving the public interest, which includes certain rights arising under common law. As applied here, the Court finds that *Snapp* and NRS Chapter 228 provide adequate bases for Plaintiff to assert *parens patriae* standing regarding its common law claims. Further, the Court does not see that *Moore* or *Ryan* expressly preclude Plaintiff's common law claims on either basis. As part of the common law claims, the SAC contains sufficient allegations that, when viewed in a light most favorable to Plaintiff, articulate a quasi-sovereign interest apart from the interest of private Nevadans, i.e., protecting the physical and mental health and well-being of all Nevada residents, especially minors, from the harms alleged. The Court cannot find that no set of facts exist wherein Plaintiff can assert its common law claims on a *parens patriae* basis as more than simply a nominal party. Based on the foregoing analysis, the Court finds that Plaintiff has sufficiently alleged parens patriae standing with respect to its common law claims (Counts III-VI), as set forth in the SAC, to survive a motion to dismiss, pursuant to *Buzz Stew* and related case law.

**Whether Plaintiff Sufficiently Alleges Products Liability:**

Defendants cite decisions in other jurisdictions that online platforms such as TikTok fall outside the generally recognized definition of "products" i.e. "tangible items" or "tangible personal property distributed commercially" for use or consumption. Restatement (Second) of Torts § 402A; Restatement (Third) of Torts: Prod. Liab 19; *See, e.g., Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1011 (C.D. Cal. 2022). Next, Defendants dispel certain arguments contained in the SAC: First, even where products liability applies to certain intangible products, like electricity, such utilities otherwise share no qualities with social media platforms, like TikTok. *Soc. Media Cases*, 2023 WL 6847378, at *15 (Cal. Super. Ct. Oct. 13, 2023). Second, the underlying policy objective of strict products liability serves to remove unique obstacles to recovery associated with mass-production, and does not apply to online platforms like TikTok (which offers a tailored user experience). *Schueler v. Ad Art, Inc.*, 136 Nev. 447, 472 P.3d 686 (Nev. App. 2020). Lastly, references to TikTok as a "product" by its own Terms of Service and employment postings does not constitute a de facto legal definition in the context of products liability; rather, the Court must make that legal determination.

First, Plaintiff incorporates its *parens patriae* analysis and SAC amendments to assert standing in advancing its product-liability claims, not nominally on behalf of a narrow group of individuals, but instead based on the quasi-sovereign interest in the health and wellbeing of many Nevadans allegedly harmed. Next, Plaintiff argues that Nevada courts must consider the Restatement (Second) of Torts 402A for its policy considerations (not its static definitions), to analyze alleged "products" on a case-by-case basis taking into account changes in technology. *Schueler*, 136 Nev. at 454-55, 472 P.3d at 693. Further, Plaintiff contends the SAC sets forth sufficient facts to support the determination that TikTok constitutes a "product" under the policy considerations animating Section 402A, since TikTok constitutes a designer and manufacturer of a mass-distributed item or instrumentality with latent defects shielded from consumers, who released its social media platform into the stream of commerce in Nevada. Plaintiff cites *Schueler* to dispel the argument that the tailored products fall outside the scope of strict product liability. Finally, Plaintiff recognizes that, while not dispositive, Defendants outside references to TikTok as a "product" should be considered.

In its reply, Defendants reaffirm their prior arguments, and further contend that this Court already invoked the Second and Third Restatements' definitions of "products" in its prior Order, which adequately performed the case-by-case and policy objective analysis. Defendants also note that Plaintiff failed to address how common policy considerations underlying Section 402A, such as permitting recovery where no privity exists between a manufacturer and the consumer, or to circumvent proving that a particular party along a supply chain failed to exercise due care, apply to social media platforms. Defendants further emphasize the tangibility requirement, pointing out that the "tailored" product in *Schueler* was tangible, unlike here.

Here, the Court finds that the SAC pleads sufficient facts, when taken as true and viewed in the light most favorable to the Plaintiff, that show TikTok could under the applicable case law are not

precluded from meeting the definition of "product" for the purposes of strict products liability, as contemplated under *Schueler*. In particular, *Schueler* declined to adopt the any "static definition" of "product," instead setting forth that determining whether something constitutes a "product" requires a case-by-case application of the policy objectives animating Section 402A, leaving room for the Court to consider "changes in technology." As such, per *Schueler*, the Court need not adhere to a strict definition of "product" that encompasses only "tangible" items. Nor does the Court see that the policy considerations of Section 402A necessarily precludes a social media platform as being a "product." In particular, the allegations raised in the SAC, as cited to in Plaintiff's opposition brief, sufficiently plead that Defendants are designers and manufacturers of a mass-distributed item or instrumentality with latent defects shielded from consumers, and released said item or instrumentality into the stream of commerce in Nevada. When taken in a light most favorable to Plaintiff, the Court cannot find that no set of facts exist wherein such allegations fall outside the policy considerations of Section 402A, either by analogy to existing case law regarding certain edge-cases (e.g., electricity), or because social media platforms represent a "change[] in technology" subject to further judicial inquiry. This remains consistent with prior Court decisions wherein the Second and Third Restatements were considered under a different set of facts and arguments thereto. Thus, for the foregoing reasons, the Court finds that Plaintiff s products liability claims (Counts III & IV) are sufficiently alleged to survive a motion to dismiss, pursuant to *Buzz Stew* and related case law.

**Whether Plaintiff Sufficiently Alleges Negligence:**

Defendants argue that Plaintiff fails to allege any new facts that Defendants owed and breached any cognizable legal duty to Plaintiff. Moreover, Defendants argue that Nevada law does not recognize a special relationship between online platforms and their users to establish a duty of care. B*eckman v. Match.com*, LLC, 743 F. App x 142, 142 (9th Cir. 2018) (citing *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 221 P.3d 1276, 1281 (2009).

In its opposition, Plaintiff contends the Court dismissed negligence only because Plaintiff failed to articulate standing on behalf of Nevadans, or in the alternative, did not articulate a separate duty of reasonable care owed to the State itself. Thus, Plaintiff incorporates their arguments related to *parens patriae*, which establishes standing to assert a negligence claim on behalf of injured Nevada consumers. Plaintiff cites portions of the SAC where they allege a quasi-sovereign interest in protecting all Nevadans whose health and wellbeing suffered injury due to Defendants' failure to exercise reasonable care in the design and marketing of the TikTok platform.

In its reply, Defendants initially note that Plaintiff ignored the special relationship argument. Next, Defendants contend that the negligence claim rests entirely on its allegations of consumer harm, but does not establish the existence of a duty, let alone a duty to Plaintiff.

Here, the Court cannot find that no set of facts exist wherein Plaintiff proves the elements of their negligence claim. *See Sadler v. PacifiCare of Nev.*, 130 Nev. 990, 995, 340 P.3d 1264, 1267 (2014). The

SAC pleads sufficient facts, when taken as true and viewed in the light most favorable to the Plaintiff, that put Defendants on notice of the alleged duty of care. At this stage, the Court takes no position on the legal sufficiency of the alleged duties, as those will more appropriately be addressed at later stages of the litigation.

**Whether Plaintiff Sufficiently Alleges Unjust Enrichment:**

Defendants argue that Plaintiff fails to allege any new facts that speak to the elements of unjust enrichment, and that the alleged conduct is expressly covered by the Terms of Service and Privacy Policy contract between users and the platform, which precludes any claim for unjust enrichment. *Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 932 (D. Nev. 2010).

Plaintiff incorporates its *parens patriae* analysis and SAC amendments to assert standing in advancing its unjust enrichment claim based on a quasi-sovereign interest in the health and wellbeing of consumers to recover restitution of the value said consumers provided to TikTok for using a platform that unknowingly harmed them. Because of the close connection between "restitution" (relevant to the viable NDTPA claims) and "unjust enrichment," Plaintiff alleges unjust enrichment on a *parens patriae* basis as an equitable claim under NRCP 8(d)(3). Plaintiff alleges that it would be inequitable for TikTok to retain the profits it made by maximizing minors' time on the platform, because this unwilling maximization forms the tortious and statutory basis of the claims advanced in this litigation.

In its reply, Defendants note that the prior dismissal was grounded in the lack of allegations establishing that unjustly enriched at the expense of Plaintiff itself, rather than Nevada consumers. Defendants further reaffirm their prior arguments, noting the lack of precedent cited by Plaintiff that would allow a State to bring an unjust enrichment claim on a *parens patriae* basis, and contend that Plaintiff ignored the argument that the existence of a written agreement precludes unjust enrichment. Lastly, Defendants challenge the argument that the "close connection" to restitution under the NDTPA somehow provides a basis for unjust enrichment.

Here, the Court cannot find that no set of facts exist wherein Plaintiff proves the elements of unjust enrichment. *See Nautilus Ins. Co. v. Access Med.*, LLC, 137 Nev. 96, 101, 482 P.3d 683, 687 (2021). The Court does not see that the existence of a contract between users and the platform necessarily precludes an unjust enrichment claim where the underlying allegations involve certain acts pled in the SAC. In other words, the SAC pleads sufficient facts, when taken as true and viewed in the light most favorable to the Plaintiff, that allow Plaintiff to proceed on its unjust enrichment claim at this juncture particularly since Nevada allows alternative pleading.

**CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Defendants' Motion to Dismiss Plaintiff's

Second Amended Complaint (Doc. 108), WITHOUT PREJUDICE in its entirety.

This Decision sets forth the Court's intended disposition on the subject but anticipates further Orders of the Court to make such disposition effective as an Order or Judgment. The Order should set forth a synopsis of the relevant procedural history and the supporting basis proffered to the Court in briefing.

Counsel for Plaintiff is directed to prepare the Order, and submit it to Chambers within 14 days pursuant to EDCR 7.21.

When submitting the Order, Counsel must ensure it is submitted electronically to dc31inbox@clarkcountycourts.us in accordance with Administrative Order 22-07. Please include in the subject line the full case number - document filing code - and case caption. (For example: A-20-123456-C - ORDR - Smith v. Doe). The submitting party should also be in the subject line of the email. No additional argument should be included in the body of the email.

This Minute Order has been electronically served to all registered parties for Odyssey File & Serve. /smr/ 4/25/2025.